[No. 11319-1-III.  Division Three.  November 17, 1992.]

*In the Matter of the Marriage of* MARCIA JEAN KOVACS, *Appellant, and* JOHN E. KOVACS, *Respondent.*

*Michael F. Keyes,* for appellant.

*Kevin T. O'Shaughnessy,* for respondent.

THOMPSON, J. — Marcia Jean Kovacs appeals the superior court decree dissolving her marriage. She assigns error to the portion of the decree designating her former husband, John E. Kovacs, the primary residential parent for their three minor children. We hold the evidence relied upon by the Superior Court was insufficient to support a change in the children's primary residence. *See* RCW 26.09.187(3). We therefore reverse and remand.

Mr. and Mrs. Kovacs met in Alaska and married in 1982. For the most part, theirs was a traditional marriage: he worked full time and she cared for the home and the children. In September 1984, Mr. Kovacs sold the maintenance company he owned to a major company in the same field, then worked for it until he was fired in the spring of 1988. In 1989, Mr. and Mrs. Kovacs decided to relocate in Southern California where the economy was stronger. Rather than move the whole family at once, they agreed Mrs. Kovacs and the children would stay with her parents in Spokane while Mr. Kovacs located a house for them and found a job.

Mrs. Kovacs and the children moved to Spokane at the end of April 1989. They lived with Mrs. Kovacs' parents until their furniture arrived, then moved into a duplex owned by the parents. Mr. Kovacs joined them May 22, remained about 2 weeks, then went on to California. In August, he was hired as Director of Environmental Services at Anaheim Memorial Hospital. He found a 3-bedroom townhouse in a planned, self-contained community in Irvine.

While Mr. Kovacs was in California, Mrs. Kovacs became romantically involved with a man who lived in Olympia. She also received two traffic citations, including a charge of driving while under the influence (DWI). Her children, who were in the car, were removed to a foster home for 2 days. When Mr. Kovacs drove to Spokane in November 1989 to pack and move the family, he learned the marriage was over. Mrs. Kovacs filed a petition for dissolution. The children remained with her, but spent scheduled visitation periods with Mr. Kovacs.

Trial was held January 2 and 3, 1991. Johnny Kovacs was then almost 8, Courtney was 6, and Billy was 3.

The parents and their various friends and relatives who testified all stated that Mrs. Kovacs was the children's primary caretaker. She prepared the family's meals, and was at home most of the day. Ruth and David Gray socialized with the family while they lived in Alaska. They described Mrs. Kovacs as a "good mother" and as an "excellent mother" who "[did] things with her children". Mr. Kovacs played and roughhoused with his children, but worked long hours and frequently was gone until late at night. For the year and a half prior to trial, Mr. Kovacs lived in California and saw the children only during holidays and for 6 weeks during the summer.

Donna Gort, a mental health practitioner, testified in Mrs. Kovacs' behalf; E. Clay Jorgensen, a clinical psychologist, testified in Mr. Kovacs' case. Both professionals observed the children. Ms. Gort found them "well-behaved" and "well-mannered". Dr. Jorgensen described them as "doing fine". Ms. Gort affirmatively stated the children "are very clearly attached and bonded to their mother". When she mentioned to the children that she thought it would be hard to choose between a mother and a father, the two oldest looked at her and said, "We want to live with our mom." Dr. Jorgensen recommended the court place the children with their father because, in his opinion, Mr. Kovacs had a more stable personality and would provide more structure for the children than Mrs. Kovacs, whom he characterized as dependent.[1] Nevertheless, he admitted that a person with a personality disorder can be an adequate parent, that the best predictor of future behavior is past behavior, and that the children presently were "adequately adjusted".

RCW 26.09.187(3)(a) requires the court to consider seven factors in determining a child's primary residence:

---

[1] Dr. Jorgensen testified: "[Mr. Kovacs] errs in the direction of being overcontrolling of the kids. [Mrs. Kovacs] . . . errs in the direction of not imposing enough controls with the kids."

(i) *The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;*

(ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;

(iii) Each parent's past and potential for future performance of parenting functions;

(iv) The emotional needs and developmental level of the child;

(v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

(vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

(vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

*Factor (i) shall be given the greatest weight.*

(Italics ours.) Also, RCW 26.09.002 provides:

[T]he best interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered *only to the extent* necessitated by the changed relationship of the parents or as *required to protect the child* from physical, mental, or emotional harm.

(Italics ours.)

Mrs. Kovacs assigns error to the trial court's findings that "[t]he strength, nature and stability of the children's relationship with [Mr. Kovacs] is healthier and more evident than with [Mrs. Kovacs]", and that "[i]t is in [their] best interests . . . that they be placed with their father . . .". The court's oral decision cited Dr. Jorgensen's opinion that Mrs. Kovacs is a dependent personality and provides a less structured environment for her children than does Mr. Kovacs.

Because the trial court has the opportunity to observe and determine the credibility of witnesses and of the parties, the appellate court reviews its disposition of a custody case using an abuse of discretion standard. *In re Marriage of Cabalquinto*, 100 Wn.2d 325, 327, 669 P.2d 886 (1983); *In re Marriage of Woffinden*, 33 Wn. App. 326, 330, 654 P.2d 1219 (1982), *review denied*, 99 Wn.2d 1001 (1983). Abuse of discretion occurs when the court makes findings which are not

supported by the record. *Woffinden*, at 330-31; *In re Stell*, 56 Wn. App. 356, 369-70, 783 P.2d 615 (1989). The question here is whether evidence of Mrs. Kovacs' personality and parenting style, without evidence showing effect upon the children, is sufficient to support the court's findings.

■ In *Wildermuth v. Wildermuth*, 14 Wn. App. 442, 444, 542 P.2d 463 (1975), the court construed former RCW 26.09-.260(1)(c), which provided that custody should not be modified unless, *inter alia*, "[t]he child's present environment is detrimental to [the child's] physical, mental, or emotional health . . .". *Wildermuth* held at page 445: "[T]he . . . statute requires more than a showing of illicit conduct by the parent who has custody. There must be a showing of the *effect* of that conduct upon the minor child or children". (Italics ours.) RCW 26.09.002 also addresses a child's physical, mental, or emotional health. It provides "the existing pattern of interaction" should be altered "only to the extent . . . required to protect the child . . .".

We recognize the issue in *Wildermuth* was modification of custody, while the issue here concerns the original decision designating the children's primary residence following dissolution. However, analogy to *Wildermuth* is appropriate because the language of the former modification statute and the language of RCW 26.09.002 are comparable. In reviewing the record, we find no evidence Mrs. Kovacs' personality or parenting style has had a negative impact on the children. Even Dr. Jorgensen testified the children were doing fine and were adequately adjusted. To base a placement decision on a prediction that a change in primary caretaker will benefit children who are already physically, mentally, and emotionally healthy flies in the face of the policy of the Parenting Act of 1987, as expressed in RCW 26.09.002.

The dissent emphasizes that the children's "best interests" are of primary concern in placement decisions. But the parenting act specifically provides that such interests are ordinarily served when existing patterns of interaction are maintained. RCW 26.09.002. We hold the record must reflect actual circumstances supporting a change, not just an expert's prediction of benefit. Otherwise, placement decisions

are based on speculation, not evidence. The evidence relied on by the trial court here is insufficient to support the court's findings. Since the findings relate to the factor which is to be given the "greatest weight" in determining residence, *see* RCW 26.09.187(3)(a), the matter is reversed and remanded for trial.

We are aware the trial court rendered its decision almost 2 years ago, and the children's situation may have changed in the meantime. Accordingly, we remand for a new hearing on the issue of who should be the primary residential parent. *Stell*, at 371.

Mr. Kovacs requested attorney fees in his brief on appeal. Under RAP 18.1(c):

> In any action where applicable law mandates consideration of the financial resources of one or more parties regarding an award of attorney fees and expenses, each party must serve upon the other and file a financial affidavit no later than 10 days prior to the time set for oral argument; . . ..

RCW 26.09.140 makes need a factor in awarding attorney fees in dissolution actions, but Mr. Kovacs did not file a financial affidavit. Thus, we deny his request for fees.

Reversed and remanded.

SWEENEY, J., concurs.

SHIELDS, C.J. (dissenting) — The majority emphasizes the final disjunctive phrase in the last sentence of RCW 26.09-.002: alteration of the existing pattern of interaction should occur only when "required to protect the child from physical, mental, or emotional harm." This emphasis leads the majority to conclude the record contains "no evidence Mrs. Kovacs' personality or parenting style has had a negative impact on the children." Majority, at 731. That lack of evidence in turn results in a finding the trial court abused its discretion.

Generally, a trial court does not abuse its discretion by relying on the views of a qualified expert witness. *See George v. Helliar*, 62 Wn. App. 378, 385, 814 P.2d 238 (1991).

The court here relied primarily on the testimony of Dr. Jorgensen, an experienced clinical psychologist whose specialty is child and family relationships, and followed his recommendation. Dr. Jorgensen acknowledged it was a close call. I believe it is the trial court's function to make that call, not this court's; therefore, I dissent.

RCW 26.09.002[2] must be read in its entirety and in relation to RCW 26.09.184(1), .187(3) and .191(3). Thus read, the policy standard of this state in matters of parental custody on dissolution of marriage is the best interests of the child. Those interests are served by a parenting arrangement which *best maintains* a child's emotional growth, health and stability, and physical care and which alters the pattern of interaction between a parent and child only as necessitated by the changed relationship of the parents. The objective of the policy is to foster the relationship between the child and each parent. This objective is specifically identified in RCW 26.09.184(1) and the criteria for residential provisions is set forth in RCW 26.09.187(3). However, when fostering the relationship between the child and a parent is inconsistent with the child's best interests, the pattern of interaction may be additionally altered, with restrictions imposed if required to protect the child from physical, mental or emotional harm. The physical, mental or emotional harms are specifically identified in RCW 26.09.191(3). Thus

---

[2]RCW 26.09.002 provides:

"Parents have the responsibility to make decisions and perform other parental functions necessary for the care and growth of their minor children. In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities. The state recognizes the fundamental importance of the parent-child relationship to the welfare of the child, and that the relationship between the child and each parent should be fostered unless inconsistent with the child's best interests. The best interests of the child are served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care. Further, the best interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm."

the best interests of the child are served in one way when no physical, mental or emotional harm exists and in another way when it does exist. If no harm exists, no finding is required. The majority fails to make this distinction.

A showing of physical, mental or emotional harm is adequate cause for modification of the residential provisions of a permanent parenting plan, RCW 26.09.270, but modification is not analogous to the initial development of the parenting plan unless the harm then exists. Such an analogy ignores the objective set forth in RCW 26.09.184(1)(c) to: "[p]rovide for the child's changing needs as the child grows and matures, in a way that minimizes the need for future modifications to the permanent parenting plan." That objective requires an assessment of future prospects.

Abuse of discretion occurs when the trial court's findings are not supported in the record. *See In re Stell*, 56 Wn. App. 356, 366-67, 783 P.2d 615 (1989); *In re Marriage of Woffinden*, 33 Wn. App. 326, 330-31, 654 P.2d 1219 (1982), *review denied*, 99 Wn.2d 1001 (1983). It does not occur when findings are not required to support a conclusion of law. Here, a finding of negative impact is not required to support the trial court's conclusion of law. The majority's emphasis on the historical responsibility for performing parenting functions in RCW 26.09.187(3)(a)(i) is too narrowly circumscribed. That factor is broader and, although it is to be given the greatest weight, the other factors must be considered as well. The result of the majority's emphasis would most often be automatic residential placement with the mother. The trial court's required findings are supported in the record, albeit on conflicting testimony.

It is the trial court's duty to weigh the evidence presented by expert witnesses. The majority finds the testimony of Donna Gort, a mental health practitioner who appeared on Mrs. Kovacs' behalf, more persuasive than that of Dr. Jorgensen; it overlooks the fact Ms. Gort never met Mr. Kovacs and administered no tests to Mrs. Kovacs or the children.[3]

---

[3]Ms. Gort also testified "[m]y concern is I've seen children taken away from mothers before, but I've never seen it done successfully", indicating a preconceived notion.

In contrast, Dr. Jorgensen met separately with Mr. and Mrs. Kovacs, two times each, and with the Kovacs children three times. He administered standardized tests to all of them and prepared a written report which was admitted into evidence. On the basis of his observations and the tests, Dr. Jorgensen concluded Mrs. Kovacs has a personality disorder and recommended placement of the children with Mr. Kovacs. Dr. Jorgensen specifically considered the fact Mrs. Kovacs had more continuity with the children and is more nurturing, but concluded Mr. Kovacs' stability, responsibility and ability to establish limits for them tipped the scales in his favor. The majority correctly points out Dr. Jorgensen admitted that a person with a personality disorder can be an adequate parent; it overlooks the fact Dr. Jorgensen continued testifying "[t]he personality disorder will affect the parenting. That's inevitable. . . . Whether it affects it in a destructive way or a very mild way is what's left to be seen."

RCW 26.09.187(3)(a)(iii) requires the court to consider each parent's potential for future performance of parenting functions. The trial court placed the children with Mr. Kovacs because the evidence established he could offer a more stable and structured environment for the children than could Mrs. Kovacs. Considering the purposes of the Parenting Act of 1987 in general, the residential placement provision in particular, and Dr. Jorgensen's carefully weighed recommendation, I do not believe it can reasonably be said the court's discretion was exercised on untenable grounds or for untenable reasons. RCW 26.09.002, .004(3), .184(1), .187(3); *Coggle v. Snow*, 56 Wn. App. 499, 507, 784 P.2d 554 (1990). No abuse of discretion has been shown. I would affirm.

Review granted at 121 Wn.2d 1008 (1993).