[No. 27378-4-III.    Division Three.    March 4, 2010.]

*In the Matter of the Marriage of* LISA ZIGLER, *Appellant,* and KIRK SIDWELL, *Respondent.*

804

806

*Dustin D. Deissner* (of *Van Camp & Deissner*), for appellant.

*Blaine T. Connaughton* (of *Connaughton Law Office*), for respondent.

¶1 SWEENEY, J. — A trial judge who modifies a parenting plan must find, among other things, that a substantial change in circumstances makes the child's primary residence detrimental to his health. RCW 26.09.260(2)(c). The finding must be based on facts that have arisen since the last contested parenting plan. RCW 26.09.260(1). Here, the trial judge modified a child's primary residence from his mother's house to his father's house after finding that domestic violence at his mother's house is detrimental to his health. This finding is based on acts of domestic violence between members of the mother's household that arose after the last contested parenting plan was entered in 2002. We, therefore, conclude that the trial judge properly exercised his discretion to modify the parenting plan. We reject the mother's additional assignments of error. And we affirm the order modifying the parenting plan.

## FACTS

¶2 Kirk Sidwell and Lisa Zigler married in 1999. They had a child together, a son named Blake Sidwell, in 2000. They divorced in 2002. The 2002 parenting plan made Ms. Zigler's home Blake's primary residence.

¶3 Mr. Sidwell and Ms. Zigler agreed to modify the parenting plan in April 2004. In December 2004, Mr. Sidwell moved to modify this agreed parenting plan for several reasons, including:

- Incidents of domestic violence between Ms. Zigler and her ex-husband, Tim Briggs, that occurred before 2002;
- Incidents of domestic violence between Ms. Zigler and Mr. Sidwell that apparently occurred between 2002 and 2004;
- An assault by Ms. Zigler on her daughter, Darci Briggs, in September 2004;
- Substance abuse by Ms. Zigler's son, Cory Briggs, in 2004; and
- Possession of a gun at school by Cory Briggs in 2003.

A superior court commissioner concluded that Mr. Sidwell had not established adequate cause for modification and denied his motion. Mr. Sidwell and Ms. Zigler later agreed to modify the parenting plan in March 2006, making minor adjustments to the plan's residential schedule.

¶4 "On April 25-26, 2006[,] a serious argument and physical altercation took place in Lisa Zigler's home in Yakima. The incident involved Lisa Zigler, her husband[,] Zario Zigler, and her children Christopher Briggs and Kyle Ogdon. Zario Zigler was charged with assaulting Kyle Ogdon and Lisa Zigler in connection with this occurrence." Clerk's Papers (CP) at 74; *see* CP at 247-49; Report of Proceedings (RP) at 838-43, 845. Mr. Ogdon, however, also punched Mr. Zigler during the course of this altercation. And Ms. Zigler bit Mr. Zigler. Mr. Sidwell moved to modify the agreed parenting plan of 2006 based on this incident of domestic violence. This time the commissioner found ad-

equate cause for modification and granted Mr. Sidwell a hearing on the merits.

¶5 After a 12-day hearing, the trial court granted Mr. Sidwell's motion to modify the parenting plan:

> The custody decree/parenting plan/residential schedule should be modified because a substantial change of circumstances has occurred in the circumstances of the child or the nonmoving party and the modification is in the best interest of the child and is necessary to serve the best interest of the child. This finding is based on the factors below.
>
> > The child's environment under the custody decree/parenting plan/residential schedule is detrimental to the child's physical, mental or emotional health and the harm likely to be caused by a change in environment is outweighed by the advantage of a change to the child.
>
> The following facts, supporting the requested modification, have arisen since the decree or parenting plan or were unknown to the court at the time of the last parenting plan:
>
> > A history of domestic violence in mother's home; a chaotic, dysfunctional home environment which is detrimental to the emotional health of the child.

CP at 66-67. The court modified the parenting plan by ordering that Blake reside primarily with Mr. Sidwell.

¶6 Ms. Zigler appeals.

## DISCUSSION

STANDARD OF REVIEW

██ ¶7 We review a trial court's decision to modify a parenting plan for abuse of discretion. *In re Marriage of Hansen*, 81 Wn. App. 494, 498, 914 P.2d 799 (1996). We will not reverse the decision unless the court's reasons are untenable. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993).

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable

legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; [and] it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

*In re Marriage of Fiorito*, 112 Wn. App. 657, 664, 50 P.3d 298 (2002) (footnote omitted).

PARENTING PLAN MODIFICATIONS—STATUTORY BACKGROUND

■ ¶8 Parenting plan modifications require a two-step process set out in RCW 26.09.260 and .270. First, a party moving to modify a parenting plan must produce an affidavit showing adequate cause for modification before the court will permit a full hearing on the matter. RCW 26.09.270. "[T]he information considered in deciding whether a hearing is warranted should be something that was not considered in the original parenting plan." *In re Parentage of Jannot*, 110 Wn. App. 16, 25, 37 P.3d 1265 (2002), *aff'd*, 149 Wn.2d 123, 65 P.3d 664 (2003).

¶9 If the moving party establishes adequate cause and the court holds a full hearing, the court may then modify the existing parenting plan if it finds that (1) a substantial change occurred in circumstances as they were previously known to the court, (2) the present arrangement is detrimental to the child's health, (3) modification is in the child's best interest, and (4) the change will be more helpful than harmful to the child. RCW 26.09.260(1), (2)(c).

¶10 Ms. Zigler's appeal implicates the second step of the modification process. The primary issue here on appeal is whether the trial court properly based its decision on "facts that have arisen since the prior . . . plan or that were unknown to the court at the time of the prior . . . plan." RCW 26.09.260(1).

INVITED ERROR OR WAIVER

¶11 Mr. Sidwell contends that Ms. Zigler waived her right to challenge the trial court's decision because she did not object to the admission of the evidence supporting the

court's decision. Ms. Zigler responds that she did object to the court's basing its decision on evidence of acts from 2002 to 2005.

¶12 Ms. Zigler acquiesced to the admission of evidence of events occurring after 2002 on the 2nd day of trial. RP at 174. Then, on the 10th day of trial, she objected to the admission of those events on the ground that the commissioner had considered them when she denied Mr. Sidwell's 2004 motion for modification. RP at 1603.

¶13 "Error may not be predicated upon a ruling which admits . . . evidence unless . . . a timely objection or motion to strike is made, stating the specific ground of objection, if the specific ground was not apparent from the context." ER 103(a)(1).

■ ■ ¶14 First, this matter was, of course, tried to the court sitting without a jury. And so we can, and will, presume that the court considered only appropriate evidence. *Wolfkill Feed & Fertilizer Corp. v. Martin*, 103 Wn. App. 836, 841, 14 P.3d 877 (2000). Second, Ms. Zigler initially invited the court to consider the very evidence she now complains of. RP at 174. That said, she did object before the court made its decision, and we will therefore exercise our discretion and consider the assignment of error because it is central to her appeal. *State v. Olson*, 126 Wn.2d 315, 319, 893 P.2d 629 (1995).

RCW 26.09.260(1)—NEW AND UNKNOWN FACTS

¶15 Here, the trial court transferred Blake's primary residence to Mr. Sidwell's home because of a history of domestic violence in Ms. Zigler's home. This history includes facts that Mr. Sidwell used to support his unsuccessful 2004 motion for modification. *See* CP at 73. Ms. Zigler contends that the trial court's decision cannot be based on those facts because they arose before Mr. Sidwell's 2004 motion and the court knew about them when the commissioner denied that motion in 2005. Ms. Zigler, therefore, maintains that res judicata bars Mr. Sidwell's latest motion to modify to the extent that it relies on facts from 2002 to

2005. She asserts that, under RCW 26.09.260(1), the trial court's decision must be based only on post-2005 events.

¶16 The language of RCW 26.09.260(1) is a bit broader than Ms. Zigler suggests. RCW 26.09.260(1) allows the court to consider "facts that have arisen since *the prior [parenting] plan*" and "that were unknown to the court at the time of *the prior [parenting] plan*." (Emphasis added.) The *parenting plan*, then, and not a motion to modify a parenting plan or an order denying the motion, controls which facts can be used to support a modification.

¶17 A parenting plan is "a plan for parenting the child, including allocation of parenting functions, which plan is incorporated in any final decree or decree of modification in an action for dissolution of marriage or domestic partnership, declaration of invalidity, or legal separation." RCW 26.09.004(3). A motion to modify a parenting plan is just that, a motion seeking to modify a parenting plan. RCW 26.09.270. The motion includes "an affidavit setting forth facts supporting the requested . . . modification." *Id.* A motion to modify a parenting plan is not a parenting plan. Neither Mr. Sidwell's 2004 motion nor the order dismissing that motion for lack of adequate cause, then, should dictate what facts can and cannot support this trial judge's decision to modify Blake's primary residential placement.

¶18 Moreover, the facts underlying the parties' agreed parenting plans (entered in 2004 and 2006) appear to be unknown to the trial judge. "Unknown" facts *include* those facts that existed before an agreed parenting plan was entered. *In re Marriage of Timmons*, 94 Wn.2d 594, 598-99, 617 P.2d 1032 (1980).

¶19 The "prior plan" for RCW 26.09.260(1) purposes, then, was the parties' original parenting plan. It was filed in 2002. That means the trial court here had to base its decision to modify the existing parenting plan on facts that were not before the court at the 2002 dissolution proceedings. And it did. It modified custody because of "[a] history of domestic violence in mother's home; a chaotic, dysfunc-

tional home environment." CP at 67. These findings are supported by evidence of Ms. Zigler's assault on her daughter in 2004, Mr. Zigler's assault on Ms. Zigler and her son in 2006, Ms. Zigler's assault on Mr. Zigler in 2006, and gun possession and substance abuse by Ms. Zigler's son in 2003 and 2004. All of these events occurred after the court entered the original parenting plan in 2002. The trial court, then, did not abuse its discretion by basing its decision to modify the parenting plan on these events. RCW 26.09.260(1).

SUFFICIENT EVIDENCE OF DETRIMENT AND A HISTORY OF DOMESTIC VIOLENCE

¶20 Ms. Zigler next challenges some of the trial court's findings. Our standard for reviewing the challenged findings is substantial evidence. *McDole*, 122 Wn.2d at 610. That means we look at the evidence and reasonable inferences therefrom in the light most favorable to the respondent, Mr. Sidwell. *Keever & Assocs., Inc. v. Randall*, 129 Wn. App. 733, 737, 119 P.3d 926 (2005).

¶21 Ms. Zigler argues that the record does not show a history of domestic violence. "Domestic violence" includes assaults between family members. RCW 26.50.010(1). And the record here shows Ms. Zigler assaulted her daughter in 2004 and her husband in 2006 and Mr. Zigler assaulted Ms. Zigler and her son in 2006. These assaults are sufficient evidence of past acts of domestic violence.

¶22 Ms. Zigler also argues that the trial court did not find and the record does not support a finding that her home is detrimental to her son's health. A trial court must find that a child's primary residence is detrimental to the child's health before it can modify a parenting plan. RCW 26.09.260(2)(c). And the trial court here twice found that Ms. Zigler's home is detrimental to Blake's health:

> The child's environment under the custody decree/parenting plan/residential schedule is detrimental to the child's physical, mental or emotional health.

CP at 67.

A history of domestic violence in mother's home; a chaotic, dysfunctional home environment which is detrimental to the emotional health of the child.

CP at 67.

¶23 Ms. Zigler, however, maintains that a finding of detriment must be supported by evidence that shows the effect the child's environment has had on the child. She relies on our opinion in *In re Marriage of Kovacs* for support. 67 Wn. App. 727, 840 P.2d 214 (1992). But the Supreme Court reversed our holding in *Kovacs*. *In re Marriage of Kovacs*, 121 Wn.2d 795, 854 P.2d 629 (1993). And the opinion's reference to RCW 26.09.260(2)(c) was dicta in any event. *Kovacs*, 67 Wn. App. at 731.

¶24 Ms. Zigler also relies on language in *Wildermuth v. Wildermuth* for the proposition that there must be direct evidence of detriment. 14 Wn. App. 442, 542 P.2d 463 (1975). Here is what the *Wildermuth* court held: "[T]he controlling statute requires more than a showing of illicit conduct by the parent who has custody. There must be a showing of the effect of that conduct upon the minor child or children." *Id.* at 445. First of all, we do not find this additional requirement in the statute, RCW 26.09.260(2)(c), or in the case authority cited by *Wildermuth*, 14 Wn. App. at 445 (citing *McDaniel v. McDaniel*, 14 Wn. App. 194, 197-98, 539 P.2d 699 (1975)). But that aside, there is ample evidence in this record from which the trial judge could have inferred that this nine-year-old boy was likely affected by the extreme dysfunction, including violence, as reflected in the court's findings of fact:

The child's environment under the custody decree/parenting plan/residential schedule is detrimental to the child's physical, mental or emotional health and the harm likely to be caused by a change in environment is outweighed by the advantage of a change to the child.

CP at 67 (Finding of Fact 2.2).

A history of domestic violence in mother's home; a chaotic, dysfunctional home environment which is detrimental to the emotional health of the child.

CP at 67 (Finding of Fact 2.7).

¶25 Indeed, the 2006 episode of domestic violence at Ms. Zigler's house, alone, supports the finding of detriment here. Children who live in violent homes are traumatized by the violence and more likely to commit crimes as adults. Andrew King-Ries, Crawford v. Washington: *The End of Victimless Prosecution?*, 28 SEATTLE U. L. REV. 301, 307 n.31 (2005). A reasonable inference from the record, then, supports the trial court's findings that Ms. Zigler's home is detrimental to Blake's health.

EVIDENCE OF PAST MISCONDUCT

¶26 Ms. Zigler argues that the trial judge also abused his discretion when he refused to allow her to develop evidence of Mr. Sidwell's prior misconduct. A trial judge has considerable discretion to exclude evidence. *City of Kennewick v. Day*, 142 Wn.2d 1, 5, 11 P.3d 304 (2000). We will overturn such a decision only if the judge abused his discretion. *Id.*

¶27 Ms. Zigler cites several areas in the record where she says the trial court erroneously limited her ability to show Mr. Sidwell's past misconduct. Br. of Appellant at 35. But none of the citations refers to an instance when the trial court excluded, limited, or even ruled on evidence of Mr. Sidwell's past misconduct. And so she has failed to demonstrate that the trial judge abused his discretion.

¶28 Moreover, Mr. Sidwell notes that the judge actually let Ms. Zigler present evidence of his past misconduct. The record shows that the trial judge here heard Ms. Zigler's testimony about Mr. Sidwell's past actions without limitation. *See* RP at 1075-76, 1086, 1090, 1092-93 (describing Mr. Sidwell's actions at custody exchanges); *see also* RP at 1093-95 (testifying that son acquired infection that Mr. Sidwell failed to prevent or remedy). We, then, reject Ms. Zigler's claim to the contrary.

COURTROOM MANAGEMENT

¶29 Ms. Zigler also contends that Mr. Sidwell's attorney was excessively aggressive, asked argumentative

questions, and made improper comments to the trial court, the witnesses, and opposing counsel at trial. She argues that the trial court abused its discretion by failing to control the attorney's behavior. She also argues that the attorney's alleged misconduct entitles her to a new trial. *See* Br. of Appellant at 37 (quoting *Aluminum Co. of Am. v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 539, 998 P.2d 856 (2000)). Trial judges have wide discretion to manage their courtrooms and conduct trials fairly, expeditiously, and impartially. *State v. Johnson*, 77 Wn.2d 423, 426, 462 P.2d 933 (1969). We, therefore, review a trial judge's courtroom management decisions for abuse of discretion. *Peluso v. Barton Auto Dealerships, Inc.*, 138 Wn. App. 65, 69, 155 P.3d 978 (2007).

¶30 Trials must be fair but they need not be perfect. *Brown v. United States*, 411 U.S. 223, 231-32, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973). "One touchstone of a fair trial is an impartial trier of fact—'a jury capable and willing to decide the case solely on the evidence before it.' " *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982)).

¶31 The record here shows the trial judge dealt with the conduct of Mr. Sidwell's attorney in a way that was reasonably designed to secure a fair, expeditious, and impartial trial. *Johnson*, 77 Wn.2d at 426. The judge regularly sustained objections to argumentative questions and pointed out irrelevant ones. *See, e.g.*, RP at 1375, 1383, 1387, 1576. He demonstrated an ability to filter out flaws in presentation style and to, instead, focus on the evidence presented. *See, e.g.*, RP at 1259, 1391, 1400, 1473. And the trial judge's decisions were obviously calculated to move the trial along (*see, e.g.*, RP at 923, 1153, 1387, 1391, 1541-42), promote the production of evidence (*see, e.g.*, RP at 1473, 1574, 1576), and encourage professionalism (*see, e.g.*, RP at 923, 1400, 1467). In sum, the trial judge here properly exercised his discretionary authority. *McDonough Power*,

464 U.S. at 554; *Johnson*, 77 Wn.2d at 426. In fact, from our review of this record, the trial judge should be complimented for the way he managed this trial.

¶32 We affirm the trial court's order modifying the parties' parenting plan.

BROWN, A.C.J., and KORSMO, J., concur.

Review denied at 169 Wn.2d 1015 (2010).