**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Marriage of | No. 60292-0-II |
| FRED O. RAMEY | |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| TIFFANY L. DEGENSTEIN, | |
| Appellant. | |

GLASGOW, J.—Tiffany Degenstein and Fred Ramey were in a relationship for several years, had two children, and eventually married. They divorced in 2018, and the trial court approved a parenting plan under which they shared residential time with the children.

In 2023, Ramey became aware that Degenstein was using drugs and behaving erratically. He petitioned the court to modify the parenting plan. In 2024, the trial court approved a modification of the parenting plan awarding primary residential time to Ramey and limiting Degenstein's residential time. The modification included a phased plan under which Degenstein could increase her residential time with the children if she could show that she was complying with substance abuse treatment and remaining sober. Although Degenstein was unemployed, the trial court imputed income to her and ordered her to pay child support. It also ordered Degenstein to pay attorney fees on the grounds that she had submitted several falsified negative drug tests to

the court during the litigation. Degenstein appeals the modification as well as the income imputation and award of attorney fees. We affirm.

FACTS

I. BACKGROUND

Tiffany Degenstein and Fred Ramey met in 2007 and began a romantic relationship. Degenstein and Ramey had two children: a daughter, AR; and a son, BR. Degenstein and Ramey were married in 2017 but divorced the following year. At the time of the divorce AR was nine years old and BR was three years old.

The trial court approved a parenting plan for Ramey and Degenstein in November 2018 at the same time it issued the final marriage dissolution order. The trial court stated that neither parent had any problem "that may harm the children's best interests" and accordingly imposed no limitations on either parent. Clerk's Papers (CP) at 41. It ordered joint decision-making regarding major educational and health care decisions. The plan specified that the children would live primarily with Degenstein but that they would live with Ramey every other weekend and every week from 7:00am Tuesday to 5:00pm Wednesday and 7:00am Thursday to 5:00pm Friday.

Sometime in 2022 or 2023, BR allegedly told a school counselor that Degenstein had left him in her car while she patronized a bar. Child Protective Services investigated the incident and reportedly gave Degenstein a warning. In August 2023, Degenstein left her job as a teacher. She alleges that she left for "medical reasons." CP at 147.

Degenstein began dating Andrew Kashuba in August 2023 and the two became engaged in October 2023. According to Kashuba, he discovered in November 2023 that Degenstein was using methamphetamine. Kashuba explained that he told AR, who was a teenager at the time, and later

2

Ramey about Degenstein's drug use. Kashuba and Degenstein ended their relationship after this incident.

Shortly afterward, in December 2023, Degenstein got in an argument with AR while driving and allegedly kicked her out of the car and left her at a fast-food restaurant. AR called a friend's parent to pick her up and returned to Degenstein's house. In the aftermath, Degenstein asked Ramey to allow AR to live with him "for the next 6 months" and Ramey agreed. CP at 109.

I. PETITION TO MODIFY PARENTING PLAN

In January 2024, Ramey petitioned the court to modify the parenting plan, requesting limitations on Degenstein's parenting time and decision-making authority. He informed the trial court that AR was now living with him full time, with Degenstein's permission, in spite of the dictates of the original parenting plan. Ramey also told the court that Degenstein was abusing substances and neglecting BR. He argued that Degenstein's behavior had "created an unstable and unsafe living environment" that was harmful to the children. CP at 87.

In a declaration in response to Ramey's motions, Degenstein claimed that the children had accused Ramey of "physically pull[ing] [AR] [f]rom his vehicle, . . . scream[ing] at the children constantly[,]" and forcing them "to do twice the amount of chores as" Ramey's stepchildren. CP at 157. Degenstein included as exhibits a series of text exchanges between herself and Ramey, apparently from when they were breaking up, in which she accused Ramey of grabbing her and throwing her onto a bed, causing her arm to bruise. In the exchange, Ramey responded without disputing her accusation and said, "I'm sorry I have ever hurt you in any way." CP at 171. He continued, "I literally cannot stop doing it if I am hurt over and over though. I get hurt and lash out." *Id.*

3

The trial court set an adequate cause hearing for the motion to modify the parenting plan in February 2024. Degenstein responded before the hearing, arguing there was not adequate cause to modify. The trial court found adequate cause to hold a trial on modification of the parenting plan. In doing so, it noted that Degenstein had "filed documents on the day of the hearing," which it "glanced at . . . but did not give full consideration" to. CP at 340. It is not clear from the record what documents the court was referring to. The trial court ordered that in the meantime, Degenstein would have supervised visits and video calls with the children.

In August 2024, Ramey submitted declarations to the trial court from Chris Jamerson and Esther Thomas, both of whom were managers at drug testing laboratories. Jamerson and Thomas explained that Ramey had asked them to review hair follicle test results, ostensibly from their respective laboratories, that Degenstein had submitted to the trial court. Jamerson noted numerous discrepancies between the document Degenstein had filed in the trial court and the ordinary format for drug test results from his laboratory. Jamerson concluded that the results Degenstein had submitted to the trial court were forged. Thomas similarly stated that the document Degenstein submitted that was allegedly from Thomas' laboratory "did not match the report" on file at the laboratory. CP at 488.

In advance of trial, the parties submitted a joint statement of evidence outlining their witnesses and exhibits and indicating any objections. Ramey's exhibits included several sealed health care records, including hair test results. Degenstein did not object to any of these records, and the trial court admitted them. At the bench trial in October 2024 the court heard testimony from Ramey, Degenstein, Jamerson, and Thomas. After trial concluded, the court found in Ramey's favor and approved the modification of the parenting plan.

4

## II. FINDINGS AND FINAL PARENTING PLAN

In its final order and findings, the trial court ruled that there had been a substantial change in circumstances justifying a change in the parenting plan. The trial court identified five reasons for its ruling: (1) AR was already living with Ramey because Degenstein had kicked her out of the home twice; (2) there were three tests of Degenstein's hair follicles that were positive for methamphetamine and cocaine; (3) BR had been experiencing emotional problems that had improved since he began living full-time with Ramey; (4) child protective services had investigated Degenstein after she allegedly left BR in a car while she was at a bar; and (5) Degenstein had showed "a pattern of rapidly introducing the children to new romantic partners." CP at 594.

In the new final parenting plan, the trial court found, pursuant to RCW 26.09.191, that Degenstein had "a long-term emotional or physical problem" and "a long-term problem with drugs, alcohol, or other substances," both of which impaired "her ability to parent." CP at 597. Accordingly, the parenting plan required Degenstein to undergo a substance abuse evaluation and a separate mental health evaluation, each at a state-certified facility by an evaluator with "at least a master's degree." CP at 598. The substance abuse evaluation had to "include a . . . hair follicle test[] with the results being sent directly" from the facility to Ramey. CP at 599. Under the plan, Degenstein was then required to undergo treatment as recommended by the evaluator. All evaluation and compliance reports were to be sent directly to Ramey from the facility. The parenting plan also allowed Ramey to request Degenstein take a urinalysis tests to be performed within 24 hours of the request, with results sent directly to Ramey. Ramey would pay the cost if

the test result was negative. Because of Degenstein's substance abuse problem, the parenting plan assigned major decision-making about the children's education and health to Ramey.

The parenting plan included limitations on Degenstein's visitation with her children under RCW 26.09.191. Degenstein's time with the children would increase in phases if Degenstein successfully complied with substance abuse treatment and remained sober for specified lengths of time. Phase I of the plan entitled Degenstein to eight hours of supervised visitation with her children every other week on either Saturday or Sunday and one monitored phone call per week. The parenting plan permitted her to advance to the next phase if she complied with treatment for six months. Phase V of the plan, the final phase, entitled Degenstein to unsupervised visitation with her children every other week from Thursday evenings to Monday afternoons. The plan contemplated that Degenstein would "revert to the beginning of the previous Phase" if she had a positive drug test or failed to comply with treatment. CP at 598.

The trial court ordered Degenstein to pay $6,345 in attorney fees "incurred directly due to the falsified drug test results that" Degenstein had submitted. CP at 595. The trial court also imputed income to Degenstein based on her past earnings because it found that she was "voluntarily unemployed." CP at 582. The trial court accordingly ordered Degenstein to pay $772.11 per month in child support.

Degenstein appeals the modification of the parenting plan and child support order. She claims that the trial court erred when it found a substantial change of circumstances; that it violated her due process rights and article I, section 32 of the Washington State Constitution in several ways; that it erred when it admitted her positive drug tests into evidence; that it should not have imputed income to her when calculating child support; and that it erred when it ordered her to pay

attorney fees. Degenstein did not include verbatim reports of proceedings for the adequate cause hearing or trial in the appellate record.

ANALYSIS

I. APPELLATE STANDARDS

Under RAP 9.2(b), "[a] party should arrange for the transcription of all those portions of the verbatim report of proceedings necessary to present the issues raised on review. If the party seeking review intends to urge that a verdict or finding of fact is not supported by the evidence, the party should include in the record all evidence relevant to the disputed verdict or finding." This court may "'decline to address a claimed error when faced with a material omission in the record,' . . . or we may simply affirm the challenged decision if the incomplete record before us is sufficient to support the decision, . . . or at least fails to affirmatively establish an abuse of discretion." *State v. Sisouvanh*, 175 Wn.2d 607, 619, 290 P.3d 942 (2012) (citations omitted) (quoting *State v. Wade*, 138 Wn.2d 460, 465, 979 P.2d 850 (1999)).

"[W]e review a court's modification of a parenting plan for an abuse of discretion." *In re Marriage of Kinnan*, 131 Wn. App. 738, 746, 129 P.3d 807 (2006). Thus, "a trial court's decision will not be reversed on appeal unless the court exercised its discretion in an untenable or manifestly unreasonable way." *Id.* (citing *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993)).

We review the trial court's findings of fact under the substantial evidence standard. *In re Marriage of Zigler*, 154 Wn. App. 803, 812, 226 P.3d 202 (2010). "Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise." *In re Marriage of Crosetto*, 82 Wn. App. 545, 553, 918 P.2d 954 (1996). "[W]e look at the evidence

and reasonable inferences" from the evidence "in the light most favorable to the respondent." *Zigler*, 154 Wn. App. at 812. We do not reweigh the evidence or judge the credibility of witnesses. *In re Dependency of A.V.D.*, 62 Wn. App. 562, 568, 815 P.2d 277 (1991).

As an initial matter, we note that throughout her briefing, Degenstein emphasizes her version of the facts and suggests that the trial court's findings of fact were improper where they aligned with Ramey's evidence in spite of Degenstein's conflicting evidence. *See e.g.* Opening Br. of Appellant at 36 (alleging the trial court "disregard[ed]" Degenstein's evidence of Ramey's abuse), 37 (complaining the trial court imposed limitations on Degenstein even though her drug test results were "disputed"). But under the standards outlined above, we defer to the trial court on questions of credibility and the relative strength of conflicting evidence. Thus, to the extent Degenstein requests that we reweigh the evidence, we decline to do so here.

## II. SUBSTANTIAL CHANGE IN CIRCUMSTANCES

Degenstein first argues that the trial court erred when it found there was a substantial change in circumstances justifying a modification of the parenting plan. Generally, a trial court can only make a major modification to an existing parenting plan if "a substantial change has occurred in the circumstances of the child or the nonmoving party and . . . the modification is in the best interest of the child and is necessary to serve the [child's] best interests." Former RCW 26.09.260(1) (2009). Degenstein contends that the trial court found a substantial change in circumstances based on "(1) a temporary, consensual placement of the daughter, (2) disputed drug test results, (3) an unsubstantiated 2022 [Child Protective Services] referral, and (4) subjective claims of 'emotional improvement' for the son." Opening Br. of Appellant at 34 (citations omitted). She claims that "[t]hese findings are unsupported by the record and fail to consider

contrary evidence." *Id.* Degenstein fails to show that the trial court abused its discretion or lacked sufficient evidence to support its findings.

As an initial matter, Degenstein has not provided this court with a verbatim report of proceedings for the modification trial in October 2024. We therefore have no record of the testimony in that proceeding. Our record also does not include the exhibits from trial. It would be within this court's discretion to decline to address this claimed error on the basis that the record is materially incomplete.

But even based on the limited record provided to us, we conclude that the trial court had sufficient evidence of substance abuse and erratic behavior by Degenstein to constitute a substantial change in circumstances. We can see from the documents that are in our record that the trial court admitted Degenstein's health records, which included three hair follicle tests positive for methamphetamine. In addition, Ramey submitted declarations from Jamerson and Thomas stating that Degenstein had falsified negative drug test reports and submitted them to the trial court. Both Jamerson and Thomas also testified at trial. The record also contains a declaration from Kashuba stating Degenstein had been using methamphetamine and this was what broke up their relationship.

Additionally, Ramey submitted several of his own declarations. In those declarations, Ramey stated that Degenstein kicked AR out of her car after an argument; that she left her at a fast-food restaurant; that she later asked Ramey to take AR in full time; and that there had been a child protective services investigation into Degenstein after she left BR in a car by himself while she was at a bar. Ramey also submitted contemporaneous text messages that corroborated several

9

of these allegations. Nothing in the record indicates that Degenstein objected to the admission of any of this evidence.

This evidence supports the trial court's findings that Degenstein was abusing controlled substances, that AR had begun living with Ramey, and that child protective services had investigated Degenstein. Degenstein's argument that the trial court failed to consider Degenstein's evidence of abusive conduct by Ramey does not change our analysis. We do not know for sure what evidence Degenstein presented at trial, but as discussed above, the trial court is in a better position than we are to evaluate credibility and weigh evidence. In the situation here, where there is evidence to support the trial court's findings, evidence that Degenstein falsified test results, and an incomplete trial record, we hold that Degenstein has failed to establish the trial court abused its discretion when it found a substantial change in circumstances.

### III. EVIDENCE SUPPORTING PARENTAL LIMITATIONS

Degenstein next argues that the trial court erred when it imposed parenting limitations on her under RCW 26.09.191 in the absence of "clear and convincing evidence of harm to the children." Opening Br. of Appellant at 37. She also claims that the trial court violated her due process right to parent because it did not narrowly tailor its limitations on her residential time with the children.

A trial court has discretion to impose limitations on a parent's residential time if it finds conduct that "may have an adverse effect on the child's best interests." Former RCW 26.09.191(3) (2021). The statute enumerates several factors that can justify such limitations, including "long-term emotional or physical impairment" or "long-term impairment resulting from drug, alcohol, or other substance abuse" if the impairment "interferes with the performance of parenting

functions." Former RCW 26.09.191(3)(b)-(c). A trial court's finding that one of these factors is met must be supported by substantial evidence. *In re Marriage of Chandola*, 180 Wn.2d 632, 645, 327 P.3d 644 (2014).

"Under both the state and federal constitutions, no person may be deprived of life, liberty, or property without due process of law." *In re Parentage of R.V.*, 22 Wn. App. 2d 300, 317, 511 P.3d 148 (2022). "These provisions protect a parent's fundamental right to parent their child," but "this right is not absolute." *Id.* For instance, the court may intrude on parental rights when necessary to protect "'the health or safety of the child'" or avoid "'significant social burdens.'" *Id.* (internal quotation marks omitted) (quoting *In re Custody of Smith*, 137 Wn.2d 1, 17, 969 P.2d 21 (1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality opinion)). In general, intrusions on parental autonomy are subject to strict scrutiny, and the state cannot make such intrusions "absent a compelling interest and narrow tailoring." *Chandola*, 180 Wn.2d at 646. But strict scrutiny, and the attendant narrow tailoring requirement, apply only "to the state's infringement on parental autonomy in favor of a *nonparent's* interest." *Id.* (emphasis in original). When the adverse parties are both parents in equivalent positions, strict scrutiny and narrow tailoring do not apply. *Id.*

Degenstein's claim that there was insufficient evidence to support the trial court's imposition of parenting limitations fails. First, Degenstein misapprehends two relevant standards. The trial court's limitations are not subject to strict scrutiny or a narrow tailoring requirement because in this case, the adverse parties are the children's two parents, who are equally positioned. Degenstein is also incorrect that parenting limitations under former RCW 26.09.191(3)(b) must be

supported by clear and convincing evidence; under *Chandola*, substantial evidence is enough.[1] *Id.* at 645.

Second, for the same reasons that Degenstein could not show the trial court abused its discretion when it modified the parenting plan, she cannot show abuse of discretion here. The trial court's finding of substance abuse is supported by the positive hair follicle tests in our record as well as Kashuba's declaration stating he was aware that Degenstein was using methamphetamine. And because Degenstein has not provided a complete record, we cannot be sure that there was not more evidence to support this contention, as well as evidence sufficient to support the trial court's finding of emotional or physical impairment. We hold that Degenstein has failed to show the trial court abused its discretion when it imposed limitations on Degenstein's contact with her children.

IV. ADDITIONAL CONSTITUTIONAL CLAIMS

A.    Due Process Right to a Full and Fair Hearing

Degenstein argues that the trial court violated her constitutional right to "a full and fair hearing" at the adequate cause hearing under the state and federal due process clauses. Opening Br. of Appellant at 39 (citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). She contends that the trial court failed to give "full consideration" to a filing she submitted that included "(1) witness declarations, (2) documentation of abuse by Mr. Ramey, and (3) sealed compliance records" where the court admitted that it "merely 'glanced at'" the filing. *Id.* (citations omitted) (quoting record).

---

[1] The current version of the statute imposes a clear and convincing evidence standard when the trial court decides *not* to impose limitations in spite of finding willful abandonment, physical or emotional abuse, or domestic violence. RCW 26.09.191(6)(a), (b). But even if that provision had been in effect at the time the trial court made its decision, it would not apply to this case.

Degenstein fails to clarify how the trial court's cursory evaluation of her filing violated her due process right. The filings that the trial court stated it had "glanced at" had been submitted on the day of the adequate cause hearing. CP at 340. Degenstein cites no authority that suggests a trial court violates due process in an adequate cause hearing when it gives minimal attention to filings submitted so shortly before the hearing. *See State v. Conway*, 8 Wn. App. 2d 538, 548, 438 P.3d 1235 (2019) ("'[I]f a party does not provide a citation to support an asserted proposition, the court may assume that counsel, after diligent search, has found [no supporting authority].'" (alterations in original) (internal quotation marks omitted) (quoting *State v. Arredondo*, 188 Wn.2d 244, 262, 394 P.3d 348 (2017))). And in any case, Degenstein would have had another opportunity to present this evidence at the full modification trial.

Degenstein points broadly to *Mathews*, presumably invoking the procedural due process balancing test, but she does not explain how that case or analysis supports her position. In the absence of citations to case law that supports Degenstein's position, or more explanation as to the alleged constitutional violation, we assume that no such authority exists and affirm the trial court.

B.      Fundamental Right to Parent Under the Due Process Clause and Article I, Section 32

Degenstein also claims that the trial court violated her state constitutional due process right to parent and article I, section 32 of the Washington State Constitution. She argues the trial court violated these constitutional provisions when it required her to be evaluated by "a provider with 'a master's degree or higher,'" reasoning that this condition was "effectively impossible to satisfy." Appellant's Opening Br. at 41 (quoting record). She further contends that the trial court violated these constitutional provisions when it "delegated authority over [her] medical compliance and evaluation process to Mr. Ramey," who is "an adverse party." *Id.* at 42.

1.    Article I, section 32 guiding principles

Article I, section 32 of the Washington State Constitution reads: "A frequent recurrence to fundamental principles is essential to the security of individual right and the perpetuity of free government." "Washington courts have used this provision primarily as an interpretive mechanism" and have yet to establish "a consistent approach to" it. *Seeley v. State*, 132 Wn.2d 776, 811-12, 940 P.2d 604 (1997). "For example, art. I, § 32 has been cited as a reason for analyzing principles supporting a right to privacy, the right to free speech, the right to an insanity defense, and the restrictions on search and seizure." *Id.* at 811 (citations omitted). Courts have also cited the provision "to define principles of state and local government, to establish a separation of powers argument, and to support the right to an impartial trial." *Id.* at 811-12 (citations omitted). The Washington Supreme Court has dismissed challenges rooted in article I, section 32 when the appellant has failed to identify "a natural right, in existence at the time of the constitution's adoption" to the protection or privilege they seek. *Id.* at 812 (no natural right to use marijuana for medical treatment); *see also In re Marriage of King*, 162 Wn.2d 378, 381, 392 n.14, 174 P.3d 659 (2007) (no natural right to appointed counsel in a dissolution proceeding).

2.    Master's degree requirement

Degenstein asserts that "[i]ndustry standards for chemical dependency and parenting evaluations do not require evaluators with a master's degree." Appellant's Opening Br. at 41. But she provides no factual support for this assertion or her contention that it will be impossible to find a provider who qualifies. Further, she provides no authority to support her contention that this condition violates her state due process right or Article I, section 32. We therefore assume she found none. Finally, the requirement that Degenstein work with someone with advanced training

14

makes sense given the prior instances where there is evidence she has engaged in significant efforts, including falsifying drug test reports, to hide her substance abuse. We affirm the trial court

  3.  <u>Delegation of oversight to Ramey</u>

Degenstein cites *Troxel v. Granville*[2] for the proposition that parents are protected "from unjustified interference with their fundamental rights" and that delegating medical oversight "to an adverse party is improper" and violates due process. Appellant's Opening Br. at 42.

The *Troxel* Court held that former RCW 26.10.160(3) (2018) *repealed by* LAWS OF 2020, ch. 312, § 905, which broadly allowed non-parent third parties to petition the court for child visitation rights, unconstitutionally infringed on a parents' right to raise their children. 530 U.S. at 73. While *Troxel* generally affirms the proposition that parents have a due process right "to make decisions concerning the care, custody, and control of their children," that case is not directly relevant to the situation before us. *Id.* at 66. As discussed above, due process protections for parents are not absolute and are at their strongest when the court is weighing a parent's interests against those of a non-parent. *See Chandola*, 180 Wn.2d at 646. Here, unlike in *Troxel*, the adverse parties are both equally positioned parents and both have parenting rights that the court is obligated to consider.

Especially in light of Degenstein's history of falsifying drug tests, Degenstein has not shown that it was an abuse of discretion for the trial court to order future evaluations and tests to be sent directly to Ramey and to allow Ramey to request urinalysis tests that he would have to pay for if they came back negative. Her due process right to parent is limited by the potential risk to her children's safety if she continues to abuse substances. *See R.V.*, 22 Wn. App. 2d at 317 (right

---

[2] 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality opinion)

to parent limited when necessary to protect children's health and safety). Degenstein also fails to explain how this condition violates article I, section 32. She does not identify any natural right to choose how court-mandated drug testing results will be shared with a co-parent and does not otherwise cite any authority to support her position. We therefore assume she found none. We hold that Degenstein has not shown that these conditions violate her constitutional rights and affirm the trial court.

## V. ADMISSION OF POSITIVE DRUG TESTS INTO EVIDENCE

Degenstein next argues that it was improper for the trial court to admit her positive drug tests into evidence. She claims that the admission of this evidence violated HIPAA and Washington's Uniform Health Care Information Act, ch. 70.02 RCW. She also contends that the evidence was admitted without chain-of-custody verification and that the court improperly permitted "lay interpretation" of the drug tests in violation of the evidentiary rule requiring only expert witnesses to give specialized opinion testimony. Opening Br. of Appellant at 38 (citing ER 702).

We have discretion to refuse to review a claim of error that was not preserved below and is not manifest constitutional error. RAP 2.5(a). On the record before us there is no indication that Degenstein objected at trial to the evidence she now seeks to challenge. Because she cannot show that she preserved this claim, and because the incomplete record would make it difficult for us to adequately evaluate it, we decline to review it.

## VI. INCOME IMPUTATION

Degenstein next argues that the trial court erred when it imputed income to her and ordered her to pay child support. Degenstein maintains that the trial court's finding that she was voluntarily

unemployed was not supported by substantial evidence because Degenstein submitted evidence that she was medically unable to work. Because the record is incomplete and does not include a report of proceedings from trial, we cannot evaluate whether the trial court's finding was supported by substantial evidence. *See Sisouvanh*, 175 Wn.2d at 619. We therefore decline to address this issue.

## VII. ATTORNEY FEE AWARD

Finally, Degenstein argues that it was an abuse of discretion for the trial court to award attorney fees to Ramey because "the award was improperly tied to disputed allegations regarding 'falsified tests[]' without proof of intentional misconduct." Appellant's Opening Br. at 40. We disagree that the award was improper.

The trial court may award attorney fees in modification proceedings under RCW 26.09.140. Generally, the court will "balance the needs of the [party] requesting [attorney fees] against the ability of the other [party] to pay" when deciding whether to award attorney fees. *Crosetto*, 82 Wn. App. at 563. But the trial court does not need to consider the financial situation of the requesting party if the other party's "intransigence" caused the requesting party "to require additional legal services." *Id.* at 563. A trial court's decision to award attorney fees is reviewed for abuse of discretion. *Crosetto*, 82 Wn. App. at 563.

The attorney fee award only covers legal costs that Ramey accrued "directly due to the falsified drug test results." CP at 595. The record includes a declaration from Thomas that one drug test Degenstein submitted to the court did not match the drug test on file with Thomas' testing company. It also includes a declaration from Jamerson that another drug test Degenstein submitted did not match the formatting used by Jamerson's testing company and was a forgery. The trial

court was entitled to determine that Thomas and Jamerson were more credible than Degenstein and find that the drug tests were falsified. We therefore hold that the trial court did not abuse its discretion in awarding these limited attorney fees.

## CONCLUSION

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, P.J.

CRUSER, J.