[No. 21650-1-III. Division Three. April 6, 2004.]

*In the Matter of the Marriage of* JOHN MARTIN DRLIK, *Appellant,* and CYNTHIA JEAN DRLIK, *Respondent.*

*W. James Kennedy III*, for appellant.
*Richard H. Bartheld*, for respondent.

KURTZ, J. — As required by the decree of dissolution, Dr. John Drlik paid spousal maintenance to his former wife Cynthia Drlik and maintained a life insurance policy for her benefit. After John was stricken by brain cancer, he moved to modify the decree. The trial court granted the motion to modify in part by suspending payment of spousal maintenance pending John's future medical and employment status. But the court denied John's request to terminate the life insurance policy obligation to Cynthia.

John Drlik appeals the trial court's order contending the court lacks authority to suspend, rather than modify or terminate, spousal maintenance.

We hold that the trial court had authority under RCW 26.09.170 to suspend the maintenance obligation. We further hold, however, that it was error for the court to suspend John Drlik's maintenance obligation indefinitely based upon an unsupported finding that John might return

to gainful employment. Accordingly, we affirm in part, reverse in part, and remand to the trial court.

## FACTS

In April 2002, John Drlik filed a petition for modification of his maintenance obligation to Cynthia Drlik. The maintenance obligation arose out of a 1998 decree of dissolution that terminated his 38-year marriage to Cynthia. The dissolution decree required John to pay $3,300 per month as spousal maintenance until he turned age 70, at which time he planned to retire. He has not paid spousal maintenance since April 2002.

At the time of dissolution, John Drlik maintained a $100,000 life insurance policy through his employer. The dissolution decree obligated John to maintain the policy with Cynthia Drlik as beneficiary to the extent the proceeds would pay future maintenance. At the time of trial, John Drlik had converted the policy into an individual term policy requiring monthly premium payments of $378.80.

After dissolution, John Drlik had two surgeries for a "grade 4" brain tumor. "[John Drlik's] prognosis at the time of trial is a 50% chance of survival at 6 months." Clerk's Papers (CP) at 11. The brain tumor forced John to retire from his medical practice in June 2002. Cynthia Drlik concedes the retirement was involuntary and was an uncontemplated change of circumstances for purposes of modification of the decree.

Before his involuntary retirement, John Drlik earned $15,000 per month in gross wages. After retirement, his income fell to $4,600 per month drawn from Social Security and private disability insurance benefits. His medical expenses continue to grow notwithstanding Medicare and private health insurance.

John Drlik remarried and his current wife, Jane Drlik, earns approximately $44,000 per year working for a local school district. Jane is on leave of absence to take care of John during his illness.

John Drlik paid off approximately $115,000 in marital debts in a chapter 13 proceeding after dissolution. Nevertheless, John enjoyed "a substantial lifestyle which included various trips, numerous contributions to charities, and the aid of a housekeeper and lawn care person." CP at 12.

At the time of trial, John Drlik's monthly expenses included a $900 monthly car payment on an Audi and a $500 payment into an investment account. He was also paying the life insurance premiums mentioned above. His expenses exceeded his income.

Cynthia Drlik did not work outside the home for several years before separation. Her medical history includes breast cancer and depression. She reached age 65 in November 2002.

At the time of dissolution, Cynthia Drlik received $88,000 from a marital investment account, which she rolled into an individual retirement account (IRA). Even though she did not withdraw any of the funds, the IRA dwindled to $68,000 as of June 2002.

Cynthia Drlik is employed as a psychiatric registered nurse. "Her work is stressful, and presently she is the oldest employee on the psychiatric unit." CP at 12. She works full time and earns a gross monthly income of $3,319. "She receives occasional overtime pay." CP at 13. Prior to this dispute, Cynthia had planned "to begin drawing her Social Security benefits at age 65 and reduce her employment to an average of 20 hours per week." CP at 13.

Before this dispute, Cynthia Drlik paid a maximum contribution to a 403(b) savings plan established through her employer. In April 2002, she reduced her monthly contribution to $645. "Even if her entire contribution to the 403(b) savings account were eliminated, her expenses would still exceed her present income." CP at 13.

Cynthia Drlik "lives frugally." CP at 13. She bought a house worth $140,000 subject to a $106,000 mortgage. "She has other investment accounts totaling $10,651." CP at 13.

"In order to have sufficient funds for retirement, [Cynthia Drlik] must continue to fund her 403(b) savings plan." CP at 13.

The trial court entered an order that did not terminate spousal maintenance; however, the order suspended such maintenance "effective April 1, 2002 until further order of the court." CP at 8. The trial court further ordered John Drlik to notify Cynthia Drlik if he returned to gainful employment. Finally, the trial court ordered the following:

Petitioner's request to terminate the obligation to maintain respondent as beneficiary on petitioner's life insurance policy is hereby denied. Petitioner shall pay the monthly premiums to maintain the term life insurance policy and shall maintain respondent as a beneficiary of said policy for the balance of petitioner's natural life or until further order of the court. Should respondent receive the proceeds of said life insurance policy, respondent shall reimburse petitioner's current wife out of the life insurance proceeds a sum equal to one-half of the health insurance premiums paid from June, 2002 until the life insurance policy proceeds are disbursed.

CP at 9.

The trial court denied John Drlik's motion for reconsideration. John then appealed to this court.

## ANALYSIS

■ John Drlik contends the trial court lacks the authority to suspend, rather than modify or terminate, spousal maintenance. We will not reverse a trial court's ruling on a petition to modify a dissolution decree absent an abuse of discretion. *In re Marriage of Jennings*, 138 Wn.2d 612, 625-26, 980 P.2d 1248 (1999); *In re Marriage of Spreen*, 107 Wn. App. 341, 346, 28 P.3d 769 (2001). In determining whether the trial court abused its discretion in ordering modification, this court reviews the order "for substantial supporting evidence and for legal error." *Spreen*, 107 Wn. App. at 346 (citing *In re Marriage of Stern*, 68 Wn. App. 922, 929, 846 P.2d 1387 (1993)). "Substantial evidence supports

a factual determination if the record contains sufficient evidence to persuade a fair-minded, rational person of the truth of that determination." *Spreen*, 107 Wn. App. at 346 (citing *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)). We review solely those findings of fact to which the appellant has assigned error. *In re Contested Election of Schoessler*, 140 Wn.2d 368, 385, 998 P.2d 818 (2000) (citing *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994)). We treat any unchallenged findings as verities on appeal. *Schoessler*, 140 Wn.2d at 385 (citing *Hill*, 123 Wn.2d at 644).

In appropriate circumstances, the criteria listed in an applicable statute guides the trial court's discretionary act. *In re Parentage of Jannot*, 110 Wn. App. 16, 22, 37 P.3d 1265 (2002), *aff'd*, 149 Wn.2d 123, 65 P.3d 664 (2003). Here, the applicable statute is RCW 26.09.170(1), which allows the court to "modify a maintenance award when the moving party shows a substantial change in circumstances that the parties did not contemplate at the time of the dissolution decree." *Spreen*, 107 Wn. App. at 346 (citing *Wagner v. Wagner*, 95 Wn.2d 94, 98, 621 P.2d 1279 (1980); RCW 26.09.170(1)). John and Cynthia Drlik agree modification is justified because John's unforeseen illness and forced retirement constitute a substantial change in circumstances. Accordingly, the precise issue is whether the trial court exceeded its discretionary authority when it suspended maintenance effective April 1, 2002.

No reported Washington cases discuss this issue; therefore, a trial court's authority to suspend spousal maintenance payments appears to be an issue of first impression in this state. Cases from other jurisdictions offer little guidance. A New York court suspended a husband's child support and maintenance obligations until the wife stopped interfering with child visitation. *Welsh v. Lawler*, 534 N.Y.S.2d 539, 144 A.D.2d 226, 227-28 (1988); *see also Nesky v. Nesky*, 575 N.Y.S.2d 1004, 152 Misc. 2d 276, 277-78 (1991) (discussing suspension of child support obligations prospectively as a sanction for interference with child

visitation). And there is dicta in a Missouri case that mentions suspension of spousal maintenance as an option in appropriate circumstances. *Lombardo v. Lombardo*, 992 S.W.2d 919, 923 (Mo. Ct. App. 1999). In the child support context, Louisiana allows parents to agree to suspend support payments under certain circumstances. *New v. New*, 93-702 (La. App. 5 Cir. 1/25/94), 631 So. 2d 1183, 1186. Although the foregoing authorities generally support the concept of a suspended maintenance obligation, they provide no definitive answer.

In Washington, the trial court has statutory authority to order maintenance "in such amounts and for such periods of time as the court deems just," after taking into consideration relevant factors. RCW 26.09.090(1). Apart from exceptions not applicable here, and upon a showing of substantially changed circumstances, "the provisions of any decree respecting maintenance or support may be modified." RCW 26.09.170(1). Taken to its narrowest point, the issue is whether the verb "modify" encompasses the verb "suspend."

 Resolving this issue requires statutory interpretation, which is a question we review de novo. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001) (citing *Stuckey v. Dep't of Labor & Indus.*, 129 Wn.2d 289, 295, 916 P.2d 399 (1996)). In interpreting a statute, this court strives "to best advance" the underlying legislative purpose. *State v. C.J.*, 148 Wn.2d 672, 685, 63 P.3d 765 (2003) (citing *Morris v. Blaker*, 118 Wn.2d 133, 143, 821 P.2d 482 (1992)). Our starting point is to interpret the plain meaning of the language on the face of the statute and closely related statutes in light of the underlying legislative purpose. *See Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003); *Wagg v. Estate of Dunham*, 146 Wn.2d 63, 73, 42 P.3d 968 (2002); *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). Moreover, we interpret the statute in its entirety, reviewing all of its provisions in relation to each other. *In re Det. of Williams*, 147 Wn.2d 476, 490, 55 P.3d 597 (2002) (quoting *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 133, 814 P.2d 629 (1991)).

 The applicable chapter of the Revised Code of Washington does not define "modify." *See* RCW 26.09.004. "When no statutory definition is provided, words in a statute should be given their common meaning, which may be determined by referring to a dictionary." *Dahl-Smyth, Inc. v. City of Walla Walla*, 148 Wn.2d 835, 842-43, 64 P.3d 15 (2003) (citing *Budget Rent A Car Corp. v. Dep't of Licensing*, 144 Wn.2d 889, 899, 31 P.3d 1174 (2001)). Accordingly, we consult a general use dictionary to discern the common meaning of "modify." *Id.*

> mod·i·fy . . . **4 a :** to make minor changes in the form or structure of : alter without transforming . . . **b :** to make a basic or important change in : ALTER . . . **5 :** to change the form or properties of for a definite purpose . . . ∼ **vi :** to undergo change **syn** see CHANGE

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1452 (1993).

The dictionary definition of "modify" is broad, and synonymous with the equally broad terms "alter" and "change." In comparison, the relevant meaning of "suspend" includes "to set aside or make temporarily inoperative . . . to defer till later . . . to withhold for a time on specified conditions." WEBSTER'S, *supra*, at 2303. The broad definition of "modify" does not exclude the possibility that one may modify, change, or alter a process by suspending part of that process.

John Drlik also contends the trial court's suspension order was tantamount to termination of maintenance and thus deprived the court of further jurisdiction over the matter. We disagree. To "terminate" something is "to bring to an ending or cessation in time, sequence, or continuity : CLOSE . . . to form the ending or conclusion of . . . to end formally and definitely." WEBSTER'S, *supra*, at 2359. In other words, termination of maintenance is to "formally and definitely" end the obligation altogether with no possibility of resumption. *Id.* By contrast, suspending maintenance is to temporarily defer or delay payment of the obligation until a later time. Because the maintenance obligation still exists, albeit in a suspended state, the trial court retains

jurisdiction until payments resume or the obligation is terminated.

With respect to jurisdiction, John Drlik relies heavily on *In re Marriage of Rouleau*, 36 Wn. App. 129, 672 P.2d 756 (1983). In *Rouleau*, the trial court found the disabled former husband could meet his financial needs at the time of dissolution. *Id.* at 130. Nevertheless, the court ordered the former wife to pay one dollar per year in maintenance so as to leave open the possibility of a future modification in the event the former husband's situation worsened. *Id.* at 130-31. This court reversed because (1) the maintenance order conflicted with the trial court's finding that the former husband could meet his financial needs at the time of dissolution and (2) there was no evidence in the record that the former husband's financial needs would change in the future. *Id.* at 131-32. This court would not affirm a maintenance award based on speculation as to future needs. *Id.* at 132.

*Rouleau* is distinguishable. First, in contrast to *Rouleau*, there is no dispute as to Cynthia Drlik's need for support at the time of dissolution. In other words, this is a modification case, not a case disputing an initial maintenance award. Second, the trial court impliedly found Cynthia was in continued need for maintenance: she cannot meet her financial needs on her current income. Consequently, *Rouleau* does not control the outcome of this case.

In light of the foregoing authorities, RCW 26.09.170 grants the trial court broad discretion to modify a maintenance provision in an appropriate manner when warranted by the circumstances of the case, including suspending payment of obligations. But the trial court's authority to suspend maintenance is limited because modification applies "[o]nly as to installments accruing subsequent to the petition for modification or motion for adjustment except motions to compel court-ordered adjustments, which shall be effective as of the first date specified in the decree for implementing the adjustment." RCW 26.09.170(1)(a).

In this connection, "[i]t is well settled that a court may not modify maintenance and support payments retroactively." *In re Marriage of Olsen*, 24 Wn. App. 292, 295, 600 P.2d 690 (1979) (citing *Pace v. Pace*, 67 Wn.2d 640, 409 P.2d 172 (1965)). "At most the court can only modify maintenance and support provisions as of the date of the filing of the modification petition." *Olsen*, 24 Wn. App. at 295 (citing *Bowman v. Bowman*, 77 Wn.2d 174, 459 P.2d 787 (1969)). Moreover, an established arrearage in support payments becomes a vested judgment the aggrieved spouse can seek to recover by any lawful means. *In re Marriage of Chapman*, 34 Wn. App. 216, 220, 660 P.2d 326 (1983). "A court may not modify or condition collection." *Id*. at 221. Hence, the trial court could not retroactively extinguish any unpaid spousal maintenance John Drlik owed prior to his modification petition. *See id*. at 220-21.

Here, the unchallenged findings of fact show that because of a catastrophic illness, John Drlik lost the capacity to meet his maintenance obligations to Cynthia Drlik. Nevertheless, the trial court entered the somewhat optimistic finding that John Drlik's "present health is grim but not without hope." CP at 14. To the contrary, John's uncontroverted testimony indicates he is dying of brain cancer. According to the evidence, medical treatment can stabilize his condition for a time, but his illness is terminal in the long run.

We hold the trial court had authority under RCW 26.09.170 to suspend the maintenance obligation. But suspension of the maintenance obligation will not extinguish already-existing arrearages. Moreover, because the evidence in the record does not support the trial court's finding that John Drlik is not without hope to return to work, the trial court erred in ordering an indefinite suspension of maintenance.

We note in passing that John Drlik and Cynthia Drlik address a potential insurance issue. *See Aetna Life Ins. Co. v. Bunt*, 110 Wn.2d 368, 371-73, 754 P.2d 993 (1988) (noting that a subsequent spouse may have a community property

interest in life insurance proceeds if community funds are used to pay premiums). We cannot resolve that speculative issue on this record, but recognize the parties may renew the issue on remand.

Accordingly, we reverse and remand to the trial court for further proceedings consistent with this opinion.

SWEENEY, A.C.J., and SCHULTHEIS, J., concur.