## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In re the Marriage of:

ROYAL M. FISH,

               Appellant/Cross-Respondent,

   and

LISA ANNE FISH,

               Respondent/Cross-Appellant.

No. 48698-9-II

UNPUBLISHED OPINION

MAXA, A.C.J. – Royal Fish appeals the trial court's orders suspending his spousal maintenance obligation to Lisa Fish effective June 2015 and finding him in contempt for failing to pay maintenance from January 2015 through May 2015. After losing his employment, Royal[1] filed a petition in January 2015 to modify his maintenance obligation and to require Lisa to pay him maintenance. The trial court rejected Royal's request to make the modification effective as of the date of the petition, but indefinitely suspended Royal's maintenance effective June 2015.

We hold that the trial court did not err in (1) suspending Royal's maintenance obligation effective in June 2015 instead of in January, (2) not requiring Lisa to pay maintenance from January through May 2015, (3) holding Royal in contempt for intentionally failing to pay

---

[1] To avoid confusion, we refer to the parties by their first names. We intend no disrespect.

maintenance from January through May 2015 when he had the ability to do so, and (4) suspending rather than terminating Royal's maintenance obligation. We also decline to award attorney fees to either party.

Accordingly, we affirm the trial court's maintenance and contempt orders.

FACTS

Royal and Lisa were married from October 1979 until their separation in February 2013. A decree of dissolution dissolved their marriage in June 2014. The decree required Royal to pay maintenance of $3,800 per month. This payment was intended to equalize the parties' incomes. At the time Royal's annual income was about $116,000 while Lisa's annual income was about $55,500. The decree also provided that "[s]pousal maintenance may be reviewed . . . upon either party's loss of their employment income whether occurring as a result of involuntary loss of employment or for medical reasons." Clerk's Papers (CP) at 333.

Royal retired from the Navy in 1998. At his retirement, the Department of Veterans Affairs (VA) gave him a 60 percent disability rating as result of neck, back, knee, and ankle problems as well as problems with his eyes and sinuses. In 1999, Royal was diagnosed with transverse myelitis, an inflammation of the spinal cord, at which point the VA changed his disability rating to 90 percent.

After his retirement from the Navy, Royal worked for Bay West LLC, a company that removes explosives from impact ranges at military bases around the country. Although he was a full-time employee, his hours were based on the contracts Bay West had available. Royal had steady work from the time of the parties' separation until September 2014, when his hours were reduced. He worked on a different contract until December 5, 2014, when that contract ended

2

and he lost his employment. Bay West placed Royal on inactive status for 90 days based on the possibility that he could be put back to work. And Royal hoped he would be reemployed during that period. But Bay West never communicated an opportunity to return to work.

On January 21, 2015, Royal filed a petition for a modification of the parties' dissolution decree. In his petition, Royal stated he had involuntarily lost his employment and that, as a result, his maintenance obligations should be terminated and he should receive maintenance from Lisa. He did not state that his medical issues provided grounds for his petition. Royal also stopped paying maintenance beginning with his January payment.

After Royal lost his employment his physical condition began to deteriorate. He experienced significant problems with his low back, neck, hips, knees, and sinuses. He was taking pain medication for these conditions.

After December 5, 2014 Royal's income was limited. His recurring income included $750 in retirement and $1,857 in disability payments, both from the military. In addition, in early 2015 he received several one-time payments. Before he filed his petition, Royal received $53,000 from the sale of property he had been awarded in the dissolution decree. In March 2015 he received accrued vacation and sick pay from Bay West of $3,927.28. Also in March he received a bonus of $622.99 from Bay West for 2014 work. And in April or May he received a 2014 income tax refund of $13,157.

In April, Royal filed a motion for a temporary order eliminating his maintenance obligation and ordering Lisa to pay maintenance. The basis for the motion was that his only income was $2,607.34 in retirement and disability benefits and that he had been unable to find gainful employment since December 5, 2014. But Royal did not allege that he could not work

3

because of his disability until June 4, when he filed a supplemental declaration. In that declaration Royal stated that his physical condition made it very difficult for him to find employment. The trial court denied the motion on June 5 because Royal had not presented sufficient evidence to show that he had lost his employment or that he had made any job search efforts.

In July, Royal filed a renewed motion for a temporary order eliminating his maintenance obligation and ordering Lisa to pay maintenance. He emphasized again that he had not been gainfully employed since December 5, 2014. He also referenced a letter from his doctor dated July 14, stating that Royal would not be able to work in any capacity in the future and that he was permanently disabled. Royal stated that he was now 100 percent disabled and that he had filed for Social Security disability. The record does not show how the trial court ruled on this motion.

In August, the Social Security Administration (SSA) determined that Royal had become disabled on December 5, 2014. The SSA noted that Royal had to be disabled for five full calendar months to qualify for disability, and therefore stated that he was entitled to disability benefits beginning in June 2015. Because he started receiving these benefits, Royal dropped his request that Lisa be ordered to pay maintenance from June 2015 forward.

Royal did not have any employment between December 5, 2014 and the time of trial in January 2016. And he admitted that he did not apply for any jobs during that time.

The parties proceeded to trial on Royal's petition to terminate his maintenance obligation and to require Lisa to pay maintenance. After a bench trial, the trial court made three rulings. First, it suspended Royal's maintenance obligation effective June 2015 based on the SSA's

findings that he was disabled. The court also stated that it selected that effective date because Royal did not raise the issue of being unable to work for medical reasons until then. Second, the court found Royal in contempt of court for intentionally and willfully failing to pay maintenance for the months of January through May of 2015 despite his ability to make payments, and ordered him to pay $19,000 plus interest. Third, the court retained jurisdiction on the issue of maintenance and allowed Lisa to file a motion to modify the maintenance order in the future if there was a change in Royal's economic circumstances because of employment.

Royal appeals the trial court's orders on modification of spousal support and contempt and the trial court's failure to require Lisa to pay maintenance to him from January through May 2015.

ANALYSIS

A.    EFFECTIVE DATE OF MAINTENANCE MODIFICATION

Royal argues that the trial court erred when it suspended his maintenance obligations effective in June 2015 rather than on January 21, 2015, the date of his petition. He argues that because his financial circumstances changed on December 5, 2014 when he lost his employment, the modification should have become effective on the date of his petition. We disagree.

1.    Legal Principles

Under RCW 26.09.170(1)(b), a court may modify a maintenance obligation when the moving party demonstrates a substantial change in circumstances occurred that the parties did not contemplate at the time of the initial dissolution decree. *In re Marriage of Drlik*, 121 Wn. App. 269, 275, 87 P.3d 1192 (2004). The term "change in circumstances" refers to the obligor spouse's financial ability to pay while accounting for the other spouse's necessities. *In re*

*Marriage of Spreen*, 107 Wn. App. 341, 346, 28 P.3d 769 (2001). However, RCW 26.09.170(5)(b) states that "[a]n obligor's voluntary unemployment or voluntary underemployment, by itself, is not a substantial change of circumstances." *See also Lambert v. Lambert*, 66 Wn.2d 503, 510, 403 P.2d 664 (1965); *Fox v. Fox*, 87 Wn. App. 782, 784, 942 P.2d 1084 (1997). If a court determines that a modification is appropriate, it may do so only for payments accruing after the petition for modification. RCW 26.09.170(1)(a); *Drlik*, 121 Wn. App. at 279.

We review a trial court's modification of maintenance for abuse of discretion. *Drlik*, 121 Wn. App. at 274. A court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons. *In re Marriage of Bowen*, 168 Wn. App. 581, 586, 279 P.3d 885 (2012) (addressing property distribution and child support). A decision is manifestly unreasonable when, given the facts and applicable legal standard, it is outside the range of acceptable choices. *Id.* It is based on untenable grounds if its factual findings are unsupported by the record. *Id.* at 587. It is made for untenable reasons if based on an incorrect standard or if the facts do not meet the requirements of the correct standard. *Id.*

We also review modification orders to determine whether substantial evidence supports the trial court's findings. *In re Marriage of Hulscher*, 143 Wn. App. 708, 713, 180 P.3d 199 (2008); *Drlik*, 121 Wn. App. at 274. Substantial evidence exists if there is sufficient evidence to persuade a fair-minded, rational person of the determination's truth. *Hulscher*, 143 Wn. App. at 714.

2.   Suspension of Maintenance

Here, the trial court ruled that Royal was entitled to modification of his maintenance

obligation based on a substantial change in circumstances.  Neither party challenges that ruling.

The issue is the *effective date* of the modification – i.e., when the change of circumstances

occurred.  The trial court concluded that Royal was not credible regarding his ability to find

employment and that there was no substantial change of circumstances until June, when Royal

first informed the court that his physical condition prevented him from working and when he

began receiving Social Security disability payments.

Royal argues that this decision was error because his petition was based on his loss of

employment on December 5, 2014 and after that time he did not have the financial ability to pay

any maintenance.  He argues that the change in circumstances occurred when he involuntarily

lost his job on December 5 and that this loss justified modification as of the date of his petition,

January 21, 2015.[2]  The issue is whether the trial court abused its discretion in determining no

change in circumstances occurred until June 2015.

a.   Trial Court Ruling

The trial court made an oral ruling, which it incorporated by reference into its written

findings.  The trial court stated:

> I don't find Mr. Fish to be a particularly credible person based on somewhat part
> of his history in this case and some of his history he's had in terms of presenting
> evidence.  It was somewhat interesting that his initial claims were one thing and

---

[2] A preliminary issue is whether Royal's January 2015 maintenance payment can be modified. The parties' decree of dissolution indicated that maintenance payments were due by the first day of each month.  Royal filed his modification petition on January 21, giving the trial court authority to modify his maintenance after that date.  Because maintenance payments may be modified only prospectively, the first maintenance payment at issue is February 1.

that it evolved to another thing, and that he didn't have the information that he needed when it was needed.

. . . .

Interestingly, Mr. Fish had taken the position early on or in his testimony -- which was somewhat contradictory, which is one of the reasons his credibility is hard for me to accept -- that when he no longer was working at his place of employment that he would -- didn't go and seek benefits because he thought he would get rehired, so then he filed a petition saying he can't work. So *I don't really find it believable that he truly was not able to find employment*; however, his disability, I think, has been established.

CP at 220-21 (emphasis added).

In a subsequent hearing, the court gave the following explanation of its oral ruling:

I did not find Mr. Fish to be particularly credible, but I could not ignore the finding of Social Security, which I know is a pretty high bar to achieve in terms of finding a disability.

And so essentially I chose the June time frame because it was consistent with essentially this being raised as an issue in this case where it had not previously been raised.

And so I used that as the demarcation point for the modification, if you will, because, up until that point, the whole issue that everybody had been litigating was, could he get a job? Did he really not have a job? There hadn't been any issues of him not being able to work, even though he's had medical issues historically, as I recall.

And his own testimony was inconsistent on that point, where he basically said he thought he was going to get a job and continue down that path, and then -- until basically Social Security said no, you're disabled, and then he stopped working or looking for work. So that's why I picked that point in time. . . .

. . . .

I'm not saying he necessarily didn't involuntarily lose his job as alleged. *I'm just not convinced that he didn't have any other alternatives and that he was not employable.*

Report of Proceedings (Feb. 19, 2016) at 9-10 (emphasis added).

8

b. Analysis

It appears that the trial court made the modification effective in June 2015 because, until then, Royal did not demonstrate or even argue that he was unable to work. Further, although not specifically mentioned in the court's ruling, the evidence was undisputed that Royal did not even look for work after he lost his employment. The trial court appears to have determined that, because there was no evidence before June that Royal could not find employment, no substantial change of circumstances occurred until June. As we noted above, voluntary underemployment does not constitute a substantial change in circumstances. RCW 26.09.170(5)(b).

Royal argues that the evidence suggests a change of circumstances occurred before June 2015. Some facts support his position: it was clearly established at trial that Royal lost his employment on December 5, 2014, that he never obtained any new employment after that date, and that the SSA determined that Royal was disabled beginning on December 5. In addition, the evidence also shows that Royal's income was the same on January 21, 2015 as it was on June 1, 2015 – in fact his income significantly increased when he started receiving disability benefits in June. He argues that because he involuntarily lost his employment in December, which was a proper ground for his petition, the trial court erred in finding that a change of circumstances did not occur until June.

But the trial court concluded that Royal did not credibly demonstrate that he could not work before June. We defer to the trial court's conclusion regarding Royal's credibility as a witness. *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). And the record supports the court's finding that Royal's positions were somewhat contradictory: he testified that

9

he both hoped that he would be placed on a new contract with Bay West and that he suffered from increasingly debilitating symptoms.

We hold that the trial court's ruling was supported by substantial evidence and that the court did not abuse its discretion in ruling that June 2015 was the effective date of the modification.

B.    REQUEST FOR MAINTENANCE FROM LISA

Royal argues that the trial court erred by not requiring Lisa to make maintenance payments to him from January through May 2015. We disagree.

The trial court's goal in determining maintenance in a long-term marriage like the Fishes' is to put the parties in a roughly equal position. *In re Marriage of Wright*, 179 Wn. App. 257, 262, 319 P.3d 45 (2013). Under RCW 26.09.090, the relevant factors include both the payee spouse's needs and the payor spouse's financial resources. Maintenance should not be awarded against a spouse that has no ability to pay. *In re Marriage of Foley*, 84 Wn. App. 839, 846, 930 P.2d 929 (1997). We review the trial court's determination regarding the amount of maintenance for an abuse of discretion. *In re Marriage of Valente*, 179 Wn. App. 817, 822, 320 P.3d 115 (2014).

Here, from January through May 2015 both parties were unable to pay their monthly expenses from their income. Lisa reported $6,623 in monthly expenses and a $3,414 shortfall; Royal reported $3,590 in expenses and a $1,305 shortfall. Although Lisa earned more income than Royal from January through May, her expenses were also significantly greater. Therefore, she did not have the financial ability to make maintenance payments to Royal.

We hold that the trial court did not abuse its discretion in not requiring Lisa to pay maintenance from January through May 2015.

C.      CONTEMPT FOR ROYAL'S FAILURE TO PAY MAINTENANCE

Royal argues that the trial court erred in holding him in contempt for intentionally failing to pay maintenance from January through May 2015. We disagree.

RCW 26.18.050(1) states that an obligor who fails to pay a maintenance obligation can be subject to a contempt order pursuant to chapter 7.21 RCW. Statutory contempt of court includes, among other things, the intentional "[d]isobedience of any lawful judgment, decree, order, or process of the court." RCW 7.21.010(1)(b). A remedial sanction for contempt is appropriate "for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3); *see In re Marriage of Didier*, 134 Wn. App. 490, 500, 140 P.3d 607 (2006) (distinguishing remedial and punitive contempt). A party facing contempt for failure to pay maintenance may assert a defense that nonpayment was not intentional because he or she was unable to comply with the court's order. *See* RCW 26.18.050(4). We review a trial court's decision in a contempt proceeding for abuse of discretion. *In re Marriage of Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010).

Here, the evidence showed that Royal had the financial ability to make his maintenance payments. From January through May, Royal failed to pay $19,000 in maintenance. During that time he received $53,000 from the sale of property even before he filed his petition, and over the next few months he received over $17,000 in additional payments. Royal does not dispute these amounts, but instead claims that he used this money for other purposes.

11

Royal also argues that the one-time payments he received in early 2015 cannot be considered in determining his ability to pay maintenance because they were either related to an asset awarded to him during the dissolution (the sold property) or were part of his 2014 income, which was used to calculate his maintenance obligation. He argues that considering these funds would constitute improper double dipping.

Courts have applied a double-dipping theory to limit *initial* maintenance awards that required an obligor to fund payments from proceeds of a fixed asset that was awarded to the spouse during dissolution. *See In re Marriage of Mathews*, 70 Wn. App. 116,123-25, 853 P.2d 462 (1993) (rejecting maintenance that required payor to pay out of his half of the parties' retirement account awarded on dissolution); *In re Marriage of Barnett*, 63 Wn. App. 385, 386-88, 818 P.2d 1382 (1991) (rejecting maintenance that required payor to pay maintenance out of proceeds from his liquidation of a business awarded to him); *cf. Valente*, 179 Wn. App. at 828-30 (allowing business owner to pay maintenance from his income even though the business, split during dissolution, was valued based on future revenue).

Under these cases, the trial court arguably could not have based the amount of maintenance in the initial dissolution decree on the value of the property awarded to Royal that he sold in early 2015. But the amount of Royal's maintenance obligation was not at issue in the trial court's contempt determination. The only issue was whether Royal had the financial ability to pay his previously ordered maintenance obligation. Substantial evidence supported the trial court's finding that Royal had the financial ability to pay his maintenance obligation.

We hold that the trial court did not abuse its discretion in finding Royal in contempt for intentionally failing to pay his maintenance obligations despite his ability to pay them.

D.     SUSPENSION INSTEAD OF TERMINATION OF MAINTENANCE

Royal argues that the trial court erred by suspending his maintenance payments rather than terminating them.  We disagree.

A trial court's authority to modify maintenance obligations under RCW 26.09.170(1) includes the authority to suspend those obligations.  *Drlik*, 121 Wn. App. at 278.  As noted above, we review the trial court's ruling on a motion to modify a dissolution decree for abuse of discretion.  *Id.* at 274.  Therefore, we also review for an abuse of discretion the trial court's decision whether to suspend a maintenance obligation instead of terminating it.

Here, the trial court suspended Royal's maintenance obligation rather than terminating it because, despite the SSA's determination that Royal was disabled for Social Security purposes, the court did not believe that Royal would not work in the future.  In its oral ruling, the court framed the issue as "whether or not Mr. Fish is truly unemployable, whether or not this is somewhat of a ploy, I guess, on his side to avoid maintenance."  CP at 219.  In ruling that it would suspend maintenance and retain jurisdiction, the court elaborated:

> I'll be honest, Counsel, I don't really believe that Mr. Fish can't work.  I don't really believe that Mr. Fish is going to not work.  I don't believe your client. . . . [H]e's not a credible witness on this issue.  He's played a lot of games with the court, historically, and in his testimony, he was very inconsistent.  His testimony changed in terms of what he was doing and why he was doing it, depending on what suited him at the moment.  And as I heard his testimony, I basically would have ruled against him until the [SSA] finding was entered into evidence.
>
>     So because of that, and because I think there's a potential that he will go back to work, I am going to reserve the right to Ms. Fish to re-visit the issue of maintenance.

CP at 223-24.

Royal argues that there is no evidence to support the trial court's belief that he might go back to work, and that therefore the trial court's findings on this issue are not supported by

13

substantial evidence. However, whether a person will return to work often is a subjective determination for which there may not be direct evidence. And the trial court's findings were based specifically on the court's assessment of Royal's credibility. We defer to the trial court on matters of witness credibility. *Choi v. Sung*, 154 Wn. App. 303, 313, 225 P.3d 425 (2010). Therefore, we do not second guess the trial court's finding that Royal potentially would return to work.

Royal also argues that the holding in *Drlik* compels us to conclude that the trial court erred in suspending rather than terminating his maintenance obligation. In that case, the trial court indefinitely suspended Drlik's maintenance obligation after terminal brain cancer forced him to retire. *Drlik*, 121 Wn. App. at 274. The trial court entered a finding that, although Drlik's health was grim, it was not without hope. *Id.* at 279. The appellate court held that the trial court erred in ordering an indefinite suspension of maintenance "because the evidence in the record does not support the trial court's finding that John Drlik is not without hope to return to work." *Id.* The court's holding implied that the maintenance obligation should have been terminated rather than suspended.

The court's holding in *Drlik* was that uncontroverted evidence indicated that Drlik was dying of brain cancer. *Id.* The court apparently believed that the evidence established that there was no possibility that Drlik could return to work. *See id.* The evidence here is not so conclusive. The SSA made an administrative determination that Royal was disabled for purposes of Social Security disability benefits. But that determination does not necessarily mean that Royal was physically unable to earn any income. *See* 20 C.F.R. § 404.1574 (establishing

14

earnings guidelines to determine if social security disability recipients are engaged in substantial gainful activity and therefore unable to receive disability payments).

The trial court has discretion in ruling on a motion to modify maintenance. *See Drlik*, 121 Wn. App. at 274. Further, unless Royal does resume earning income, this provision in the trial court's order will be immaterial. We hold that the trial court did not abuse its discretion in determining that it should suspend rather than terminate Royal's maintenance.

E.     ATTORNEY FEES AT TRIAL

In a cross-appeal, Lisa argues that the trial court erred by not awarding her attorney fees. She argues that she is entitled to fees because Royal was intransigent and because his claims were meritless. We disagree.

First, Lisa argues that the trial court should have awarded her attorney fees because Royal was intransigent. A trial court may award reasonable attorney fees if one party's intransigence increased the other party's legal fees. *In re Marriage of Burrill*, 113 Wn. App. 863, 873, 56 P.3d 993 (2002). Determining intransigence is a factual issue, but it typically involves delaying, obstructing, filing unnecessary or frivolous motions, refusing to cooperate, noncompliance with discovery requests, and any other conduct that makes a proceeding unnecessarily difficult or costly. *In re Marriage of Wixom*, 190 Wn. App. 719, 725, 360 P.3d 960 (2015), *review denied*, 185 Wn.2d 1028 (2016). We review a trial court's decision regarding the award of attorney fees for abuse of discretion. *In re Marriage of Obaidi*, 154 Wn. App. 609, 617, 226 P.3d 787 (2010).

Here, Lisa notes that the trial court questioned Royal's credibility, commenting that Royal had made inconsistent statements. However, Royal's lack of credibility does not by itself indicate he acted intransigently. And Lisa does not demonstrate how Royal's lack of credibility

15

increased her attorney fees. Before the trial court Lisa claimed that Royal had not been forthcoming with evidence or not presented complete information about his income. But these statements were vague and unsupported. Therefore, Lisa has not demonstrated that the trial court's failure to award attorney fees on this ground was an abuse of discretion.

Second, Lisa argues that the trial court should have awarded her attorney fees under RCW 4.84.185, which allows a party to recover attorney fees for an action that is "frivolous and advanced without reasonable cause." We review a trial court's decision regarding the award of attorney fees under RCW 4.84.185 for an abuse of discretion. *Hanna v. Margitan*, 193 Wn. App. 596, 614, 373 P.3d 300 (2016). However, Royal's petition was partially successful and resulted in the trial court modifying his maintenance obligation. Therefore, Lisa was not entitled to attorney fees under RCW 4.84.185.

We hold that the trial court did not err in not awarding Lisa reasonable attorney fees.

F. ATTORNEY FEES ON APPEAL

Royal argues that we should award him reasonable attorney fees on appeal under RAP 18.9(a) because Lisa's cross-appeal of the trial court's failure to award attorney fees to her is frivolous. We decline to award attorney fees to Royal on appeal on this basis.

CONCLUSION

We affirm the trial court's maintenance and contempt orders.

No. 48698-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.


We concur:

_____
WORSWICK, J.

_____
SUTTON, J.