IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parenting of H.J.G., | ) | |
| | ) | No. 33764-2-III |
| JENNIFER ROETCISOENDER | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JASON GRAY, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — This appeal arises from the modification of an existing parenting

plan to award primary custody of H.G. to her father, Jason Gray, based on a finding of

emotional abuse of a child and exposure to domestic violence. H.G.'s mother, Jennifer

Roetcisoender, appeals. We affirm.

## FACTS

Ms. Roetcisoender (f/k/a/ Whaley) and Mr. Gray are the biological parents of

H.G., a minor child. The parties entered into a parenting plan in 2008 and the court

amended it in 2009, ordering H.G. to reside with Mr. Gray and visit Ms. Roetcisoender

every other weekend.

This parenting plan had a restrictive notation that prohibited H.G. from being in contact with Ms. Roetcisoender's then-boyfriend, Mr. J.C.[1] a man with an alleged reputation for domestic violence. In 2010, Ms. Roetcisoender dated a Mr. W.S. and there was a physical altercation between them, resulting in W.S.'s arrest.

Mr. Gray and Ms. Roetcisoender did not strictly comply with the parenting plan. H.G. lived nearly full time with Mr. Gray and his long-time girlfriend, Ms. T.D. In 2013, when Ms. Roetcisoender married Mr. Roetcisoender, she petitioned the court for increased visitation. Mr. Gray alleged, however, that H.G. expressed extreme dismay and would hide, cry, and scream, "I don't want to go," when sent to visit her mother. Report of Proceedings (RP) at 617. He countered with a petition requesting the court decrease Ms. Roetcisoender's visitation, alleging that Ms. Roetcisoender engaged in physical and emotional abuse of H.G., that there was domestic violence, and abusive use of conflict that created the danger of serious damage to H.G.'s psychological development. The trial court granted Mr. Gray's petition, denied Ms. Roetcisoender's, and suspended visitation between H.G. and Ms. Roetcisoender for forty-five days.

From mid-2013 into 2014, H.G. received evaluations from mental health counselors, medical doctors, and psychologists including Lindsay Hatch of Spokane Therapist LLC. H.G. received various diagnoses, including post-traumatic stress disorder

---

[1] Individuals not parties to this action will be referred to by their initials, to protect their privacy.

2

(PTSD), adjustment and anxiety disorder, and depressed mood. Her providers observed that H.G.'s anxiety occurred when she was expected to go visit her mother and that she engaged in skin picking behavior, which is often associated with anxiety.

Trial occurred before the Honorable Maryann Moreno. At trial, the court heard testimony about the domestic violence incidents in Ms. Roetcisoender's previous relationships, some of which occurred prior to the implementation of the 2009 parenting plan. T.D testified Ms. Roetcisoender had confided in her that Ms. Roetcisoender's boyfriend in 2008, Mr. A.H, may have molested H.G. that year; this information was not known to the court or Mr. Gray when entering the March 2009 parenting plan.

The court also heard testimony that in January 2014, either Ms. or Mr. Roetcisoender put H.G. in the shower with her clothes on, turned on the water, and made her stand there for a few seconds as a punishment. At trial, Ms. Roetcisoender stated she had done this to H.G., while Mr. Roetcisoender denied ever having used such a method as a form of discipline. H.G.'s medical doctor testified that H.G. told him that it was Mr. Roetcisoender who had placed her in the shower.

The trial court found emotional abuse of a child and exposure to domestic violence, and restricted Ms. Roetcisoender's time with H.G. The trial court also requested a mental health counselor work with H.G. to reintegrate the child and her mother into each other's lives going forward.

In its oral ruling, the trial court discussed Ms. Roetcisoender's past relationships as significant to the issues of H.G.'s placement. From 2009 through the end of 2012, Ms. Roetcisoender was "very unstable" following a series of bad romantic relationships, with H.G. observing each of those abusive relationships during visitation. The court found H.G.'s anxiety surrounding discipline was connected to her past exposure to domestic violence situations. This anxiety was further exacerbated by current emotional abuse by an adult in the Roetcisoender household. The trial court concluded:

> There's no doubt in my mind that . . . we need to start visitation and we need to start it now, okay? That doesn't necessarily mean that I have a magic wand . . . [to] make the anxiety go away. We have to deal with what we have on the table.
> I don't know why the counseling stopped with Ms. Hatch. I think she and [H.G.] got along real well, and I think [H.G.] made some progress with Ms. Hatch. So I'm simply going to enlist her services to develop a plan and to work with [H.G.] to therapeutically reintegrate Mom into [H.G.]'s life. I suspect that would start with [H.G.] having contact with Ms. Hatch. Then Ms. Hatch would detail, schedule some therapeutic visits between Mom and [H.G.] and work toward a somewhat normalized visitation schedule.
> I can't say today that in a year there's going to be every-other weekend visits. I don't know where [H.G.] is in all of this at this particular point in time. We've got to start this. Mom is mom. Mom's going to be mom regardless. And I think [H.G.]'s just a little bit older now, perhaps that's helpful. I'm anticipating that the . . . first couple visits would be between Ms. Hatch and [H.G.] and that at some point Mom would come up and engage in that process in any manner that Ms. Hatch believes is appropriate. Again, if Ms. Hatch would kindly assume some recommendations as to, Okay, now it's time to start with a one-on-one visitation with Mom and [H.G.], and then in time maybe there would be

couple-hour visits down at Mom's house, just a very slow integration.
Again, I can't say what that is. I'm going to have to defer to Ms. Hatch on
that.

RP at 624-625. The trial court ordered sole decision-making for H.G. to Mr. Gray with

the understanding that the court would take another look at decision-making if visitation

was ever normalized. The new 2015 parenting plan stated, under Section III,

"Residential Schedule:"

> The services of Lindsay Hatch to be enlisted to develop a plan and to work
> with [H.G.] to therapeutically reintegrate the mother into [H.G.]'s life.
>
> The Court contemplates this would start with [H.G.] having contact with
> Ms. Hatch. Ms. Hatch would detail and schedule some therapeutic visits
> between Mother and [H.G.] and work toward a somewhat normalized
> visitation schedule.
>
> The Court anticipates that the first couple of visits would be, if Ms. Hatch is
> agreeable, between Ms. Hatch and [H.G.]
>
> The Court contemplates at some point the mother would come up and
> engage in that process in any manner that Ms. Hatch believes is
> appropriate.
>
> The Court requests Ms. Hatch provide some recommendations as to
> progressing to one-on-one visitation with Mom and [H.G.]
>
> The Court contemplates that in time, there may be a couple-hour visits
> down at Mom's house in Rosalia.

5

No. 33764-2-III
*Roetcisoender v. Gray*

> The Court contemplates a very slow integration to a normalized schedule of residential time under the prior parenting [plan].

Clerk's Papers at 95.[2] Summers, vacations, holidays, and special occasions were all to be spent with Mr. Gray until such time as H.G.'s anxiety issues were resolved and the prior parenting plan could be reinstated. This appeal followed.

## ANALYSIS

Ms. Roetcisoender argues that the trial court improperly delegated reunification to the sole discretion of the counselor, that it erred in restricting her residential time based on findings of emotional abuse and exposure to domestic violence, and that the finding of exposure to domestic violence was based on impermissible testimony. We address these contentions in that order.

*Improper Delegation of Discretion*

The interpretation of a parenting plan is a question of law. *Kirshenbaum v. Kirshenbaum*, 84 Wn. App. 798, 803, 929 P.2d 1204 (1997). A reviewing court must ascertain the intention of the court that entered the original decree using general rules of construction. *Id.*

After a trial court enters a final parenting plan, the plan can be modified by court order only if there has been a substantial change in circumstances showing that

---

[2] In June, the court substituted Rachel Marrazzo, a mental health counselor from Spokane Therapist, for Ms. Hatch, who was unavailable.

6

modification is necessary to serve the best interests of the child. RCW 26.09.260(1). A trial court may delegate to a third party the limited ability to make "additions or alterations" to the parenting plan subject to the trial court's review. *Kirshenbaum*, 84 Wn. App. at 804.

There was no improper delegation of authority here. The court's order did not grant the counselor more power than statutorily permitted under RCW 26.09.260(1). The language of the parenting plan is clear that Ms. Roetcisoender is not permitted any visitation until the mental health counselor addresses H.G.'s anxiety and PTSD. H.G.'s counselor is directed to make "recommendations." Involving the counselor in making recommendations to the court to prompt a change in the parenting plan can only increase Ms. Roetcisoender's visitation with her daughter.

This court acknowledges that the order could be clearer as to whether the court or the counselor will make the final decision on if greater visitation is permitted. However, nothing in the order states it will not be the trial court making that decision. The trial court specifically contemplated a return to every-other-weekend visitation with the assistance of the counselor to ensure the schedule remained in H.G.'s best interest. If the trial court alters the parenting plan based on the counselor's recommendations, and the changes are not to Ms. Roetcisoender's liking, she may bring another challenge in the trial court.

*Restricting Residential Time*

Ms. Roetcisoender next argues that the trial court erred in restricting her residential time based on findings of emotional abuse and exposure to domestic violence, and that the finding of exposure to domestic violence was based on impermissible testimony. The testimony was admissible and the findings are supported by the evidence.

A reviewing court upholds challenged findings that are supported by substantial evidence. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). Substantial evidence is a sufficient amount of evidence to persuade the fact finder that a particular finding is true. *In re Marriage of Drlik*, 121 Wn. App. 269, 274-275, 87 P.3d 1192 (2004). On appeal, this court takes the evidence and reasonable inferences therefrom in favor of the respondent. *In re Marriage of Zigler*, 154 Wn. App. 803, 812, 226 P.3d 202 (2010). Furthermore, because of the trial court's unique opportunity to observe the parties, this court is extremely reluctant to disturb findings that result in child placement dispositions. *In re Parentage of Schroeder*, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001).

Trial courts are given broad discretion in matters concerning children and a reviewing court will not disturb a trial court's disposition of a case involving the rights of custody and visitation unless the trial court manifestly abused its discretion, that is, the decision is untenable or unreasonable. *McDole*, 122 Wn.2d at 610; *George v. Helliar*, 62 Wn. App. 378, 385, 814 P.2d 238 (1991). A court's decision is manifestly unreasonable

or based on untenable grounds if it is outside the range of acceptable choices given the facts and the applicable legal standard, or if the factual findings are unsupported by the record. *In re Marriage of Fiorito*, 112 Wn. App. 657, 664, 50 P.3d 298 (2002).

Elimination or limitation of residential time is justified by a trial court's findings under RCW 26.09.191(2) or (3). *In re Marriage of Underwood*, 181 Wn. App. 608, 611, 326 P.3d 793 (2014). If the trial court finds that one of the parents has engaged in, or resides with someone who has engaged in, certain conduct specified in RCW 26.09.191(2)(a)-(b), the trial court must limit or restrain completely that parent's residential time. Emotional abuse of a child is one statutory criterion.

The trial court found H.G. had been emotionally abused while in her mother's care. Therefore, the trial court gave Mr. Gray decision-making power and limited Ms. Roetcisoender's visitation. RCW 26.09.191(1), (2). The court relied on the testimony of H.G.'s health care providers that her stress, skin picking, and anxiety resulted from exposure to "excessive discipline" in the Roetcisoender household. One psychologist testified that H.G. "does not feel she can trust her mother to keep her safe," testimony that persuaded the court to find that H.G. was in fact emotionally abused in Ms. Roetcisoender's home. *See Drlik*, 121 Wn. App. at 274-275. It appears the trial court inferred that placing H.G. in the shower was a form of excessive discipline resulting in emotional abuse. *See Zigler*, 154 Wn. App. at 812. Construing the facts in our record in the light most favorable to Mr. Gray, it was not an abuse of discretion for the trial court to

9

find that either Mr. or Ms. Roetcisoender was responsible for emotional abuse of H.G., and limit visitation accordingly. *See* RCW 26.09.191(2)(a)(ii), (b)(i); *Underwood*, 181 Wn. App. at 613; *Zigler*, 154 Wn. App. at 812.

Similarly, if the trial court finds the existence of certain factors under RCW 26.09.191(3)(g), the trial court may limit or eliminate any provision in the parenting plan if a parent's involvement or conduct may have an adverse effect on the child's best interests. *Underwood*, 181 Wn. App. at 613. Before imposing RCW 26.09.191(3)(g) restrictions, a trial court must find substantial evidence shows a danger of damage exists with a particularized finding of a specific, and fairly severe, level of harm to the child.

Here, the court heard testimony (1) that H.G. was at times in the presence of J.C. in violation of the March 2009 parenting plan and that he was abusive to Ms. Roetcisoender and all her children, (2) that, unbeknownst to the court or Mr. Gray, A.H. allegedly abused H.G. prior to the implementation of the March 2009 parenting plan, and (3) that W.S. allegedly abused one of Ms. Roetcisoender's other children and assaulted Ms. Roetcisoender. *See Underwood*, 181 Wn. App. at 613. Interpreting the testimony of the parties in the light most favorable to Mr. Gray, it was reasonable for the trial court to find that H.G. had been exposed to domestic violence through Ms. Roetcisoender's past relationships. Based on this factor, the court properly supported its limitation of visitation between H.G. and her mother. RCW 26.09.191(3)(g); *See In re Marriage of Chandola*, 180 Wn.2d 632, 645, 327 P.3d 644 (2014).

10

*Impermissible Testimony*

In modifying a parenting plan, RCW 26.09.260(1) allows the court to consider facts that have arisen since the prior parenting plan or that were unknown to the court at the time of the prior parenting plan. "Unknown" facts may include those that existed before the parents entered into an agreed parenting plan. *Zigler*, 154 Wn. App. at 811 (citing *In re Marriage of Timmons*, 94 Wn.2d 594, 600, 617 P.2d 1032 (1980) ("a change must have occurred from circumstances only as were previously known to the court")). There is a strong presumption against modification because changes in residences are highly disruptive to children. *McDole*, 122 Wn.2d at 610. Thus, it is the moving party's burden to prove a modification is appropriate. *Schroeder*, 106 Wn. App. at 350.

Ms. Roetcisoender argues that much of the evidence heard by the court in this matter occurred prior to the entry of the March 2009 parenting plan; Mr. Gray counters that the evidence occurred after the March 2009 parenting plan, or was unknown at the time of its creation. The alleged abusive incident with Mr. A.H. likely occurred in late 2008, but was unknown to Mr. Gray or the court at the time of the March 2009 parenting plan and may be considered by the trial court. *See Zigler*, 154 Wn. App. at 811. The March 2009 parenting plan prohibited Mr. J.C. from being present when H.G. was with Ms. Roetcisoender, but following the entry of the plan, Ms. Roetcisoender allegedly told Ms. T.D that prohibition was violated. Finally, Ms. Roetcisoender's relationship with Mr. W.S., which followed the entry of the March 2009 parenting plan, was allegedly

11

abusive toward both Ms. Roetcisoender and her other child. The trial court properly utilized the information about these three relationships in finding that Ms. Roetcisoender had exposed H.G. to domestic violence.

While modifications to parenting plans are not preferred, H.G.'s extreme emotional and mental distress resulting from visitation with Ms. Roetcisoender rendered a modification of visitation appropriate. Substantial evidence existed to support the findings of the trial court limiting Ms. Roetcisoender's visitation with H.G. The trial court did not abuse its discretion in considering evidence of Ms. Roetcisoender's past relationships for making its findings of fact when modifying H.G.'s parenting plan.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.